Colorado Supreme Court Opinions || February 29, 2016

Colorado Supreme Court -- February 29, 2016
2016 CO 15. No. 12SC1005. People v. Graves.

 The Supreme Court of the State of Colorado 
 2 East 14th Avenue • Denver, Colorado 80203

 2016 CO 15

 Supreme Court Case No. 12SC1005 
 Certiorari to the District Court 
 Adams County District Court Case No. 12CV839

 Petitioner: 
 The People of the State of Colorado,
 v.
 Respondent: 
 Gary Graves.

 Judgment Reversed 
 en banc 
 February 29, 2016

 Attorneys for Petitioner:
 Dave Young, District Attorney, Seventeenth Judicial District
 Cameron Munier, Deputy District Attorney

 
 Brighton, Colorado

 Attorneys for Respondent:
 Alison Ruttenberg, Alternate Defense Counsel

 
 Boulder, Colorado

 Attorneys for Amicus Curiae Colorado Criminal Defense Bar:
 The Noble Law Firm, LLC
 Antony Noble
 Tara Jorfald

 Lakewood, Colorado

 JUSTICE MÁRQUEZ delivered the Opinion of the Court.

  

 ¶1 We granted the People’s petition for a writ of certiorari to review an order of the Adams County District Court concluding that the “lewd fondling or caress” provision of Colorado’s public indecency statute is unconstitutionally overbroad and vague. We reverse. Because the provision does not burden a substantial amount of constitutionally protected speech or expressive conduct, the provision is not unconstitutionally overbroad. Moreover, because the defendant’s conduct in this case meets any reasonable definition of “lewd fondling or caress,” the statute is not vague as applied to his actions, and he cannot complain of the alleged vagueness of the law as applied to the hypothetical conduct of others.

 ¶2       Defendant Gary Graves was arrested when an undercover police officer observed him stroking another man’s erect penis, through the man’s pants, at an adult movie theater. The People charged Graves in Adams County Court with public indecency, a class 1 petty offense, in violation of section 18-7-301(1)(d), C.R.S. (2015). That provision defines public indecency to include “a lewd fondling or caress of the body of another person” in a “public place” or “where the conduct may reasonably be expected to be viewed by members of the public.” Id. Graves moved to dismiss the charge, arguing that this provision is unconstitutionally overbroad and vague, both on its face and as applied to his conduct. The county court agreed that the provision is unconstitutionally vague and dismissed the case without addressing Graves’s overbreadth claim.

 ¶3 The People appealed to the Adams County District Court, which affirmed the ruling below. The district court noted that the legislature had not defined the statutory terms “lewd,” “fondling,” or “caress,” and that what society considers to be “lewd” changes over time. The court suggested that the statute might apply to a nursing mother, and opined that the People’s interpretation of the terms “lewd” and “caress” could result in “literally thousands of arrests each week” of people engaging in ordinary public displays of affection. The court concluded that section 18-7-301(1)(d) is, therefore, unconstitutionally overbroad and vague. The People petitioned this court to review the district court’s judgment.[1]

 ¶4 We reverse. The public indecency statute as a whole targets only overtly sexual
 activity in public. In this vein, section 18-7-301(1)(d) does not criminalize innocuous public displays of affection; it proscribes only “lewd” fondling or caressing of another person’s body in a public place. “Lewd” behavior is commonly understood to be overtly sexualized behavior that is indecent or offensive; indeed, the term is often defined as “obscene” or “lascivious.” As construed in this opinion, section 18-7-301(1)(d) does not reach constitutionally protected speech or expressive conduct; to the extent that the statute might reach protected expression under hypothetical facts not before us, such potential overbreadth is not “substantial” in relation to the statute’s legitimate sweep and may be addressed by courts on a case-by-case basis. Moreover, Graves’s conduct falls well within the proscriptive bounds of section 18-7-301(1)(d) and is not shielded from regulation by the First Amendment. Because section 18-7-301(1)(d) clearly prohibited Graves’s conduct in this case, the provision is not vague as applied to him, and he cannot complain of its alleged vagueness as applied to the hypothetical conduct of others. Accordingly, we reverse the district court’s order holding that section 18-7-301(1)(d) is unconstitutionally overbroad and vague.

 I. Facts and Procedural History

 ¶5 On November 9, 2011, an Adams County deputy sheriff was conducting an undercover operation at Circus Cinema, a movie theater that shows pornographic films. According to his incident report, the deputy was standing in the aisle of the theater when he observed the defendant, Gary Graves, remove his penis from his pants, and saw another male patron begin to stroke Graves’s penis. The deputy observed Graves then reach over to a third patron who was leaning against the wall and begin to stroke that man’s erect penis through his pants. At that point, the deputy identified himself and arrested Graves and the others.

 ¶6   The People charged Graves in Adams County Court with lewd fondling or caressing the body of another in a public place, a class 1 petty offense under the public indecency statute. § 18-7-301(1)(d), (2)(a), C.R.S. (2015).[2] Graves moved to dismiss the charge on grounds that section 18-7-301(1)(d) is unconstitutionally overbroad and vague.[3] Following argument from counsel, the county court concluded that the terms “lewd,” “fondling,” “caress,” and “body” were not sufficiently defined in the statute or clear from ordinary usage and that no limiting construction was possible. It therefore ruled that section 18-7-301(1)(d) was nconstitutionally vague and dismissed the case. The court did not address Graves’s claim of overbreadth.

 ¶7 The People appealed the ruling to the Adams County District Court pursuant to
 Crim. P. 37.[4] The People argued that the plain and ordinary meaning of the statutory terms provides adequate notice of the conduct proscribed and is sufficient to prevent discriminatory enforcement. Graves responded that the undefined term “lewd” renders the statute unconstitutionally vague. He also defended the county court’s ruling on the grounds that the statute is overbroad, arguing that it reaches a substantial amount of constitutionally protected activity.

 ¶8 The district court affirmed. It noted that the statutory terms “lewd,” “caress,”
 and “fondling” are not defined. It rejected the People’s argument that the dictionary definitions of these terms sufficiently delimit the scope of the statute, noting that the meaning of “lewd” can change with shifting social and cultural norms. The court reasoned that a “diverse and multicultural society needs a more specific definition of the terms to meet the requirements of Due Process” and that “[p]eople are not required to guess what others may consider to be ‘lewd’ or ‘vulgar.’” The court intimated that Graves’s conduct in this case was in fact unlawful, stating that it recognized that “the facts of this case differ[] sharply from some of the analysis provided.” Nevertheless, the court concluded that “the words of the statute are too broad to provide the framework for lawful conduct.” The court then summarily concluded that section 18-7-301(1)(d) is “both vague and overbroad” because it “does not meet Due Process standards for safeguards required to provide adequate notice to people of what is considered unlawful conduct.” We granted the People’s petition for a writ of certiorari to review the district court’s judgment.[5]

 II. Standard of Review

 ¶9        The constitutionality of a statute is a question of law subject to de novo review.
 See Coffman v. Williamson, 2015 CO 35, ¶ 13, 348 P.3d 929, 934; Hinojos-Mendoza v. People, 169 P.3d 662, 668 (Colo. 2007). Statutes are presumed to be constitutional. People v. Hickman, 988 P.2d 628, 634 (Colo. 1999); see also Williamson, ¶ 13, 348 P.3d at 934. This presumption is rooted in the doctrine of separation of powers and in the judiciary’s respect for the roles of the legislature and the executive in the enactment of laws. City of Greenwood Vill. v. Petitioners for Proposed City of Centennial, 3 P.3d 427, 440 (Colo. 2000). It acknowledges that “declaring a statute unconstitutional is one of the gravest duties impressed upon the courts.” Id. Consequently, a party challenging the constitutionality of a statute must prove the statute’s unconstitutionality beyond a reasonable doubt. Id. (citing, inter alia, Hickman, 988 P.2d at 634); see also People v. Ford, 773 P.2d 1059, 1062 (Colo. 1989) (noting that the rule requiring a challenger to prove a statute unconstitutional beyond a reasonable doubt applies in cases alleging that the statute infringes on First Amendment freedoms).

 III. Analysis

 ¶10 We first examine the doctrines of overbreadth and vagueness and describe the analytical framework for resolving challenges on these grounds. We then apply this framework to the facts of this case and conclude that the district court erred in ruling that section 18-7-301(1)(d), C.R.S. (2015), is unconstitutionally overbroad and vague.

 A. Relevant Constitutional Law

 ¶11 Taking overbreadth and vagueness in turn, we explore the purposes of each doctrine and identify the factors to be considered in determining whether a legislative enactment meets constitutional requirements. We then distinguish the doctrines while acknowledging that some overlap exists between these frequently confused constitutional limitations.

 1. Overbreadth

 ¶12 The overbreadth doctrine addresses the concern that the scope of a law may be so broad that it restricts speech protected by the First Amendment or has a chilling effect on such constitutionally protected speech. People v. Shell, 148 P.3d 162, 174 (Colo. 2006). The doctrine permits a litigant to bring a facial challenge to a law that impacts speech or expressive conduct protected by the First Amendment. Seem Broadrick v. Oklahoma, 413 U.S. 601, 612–13 (1973); Bd. of Educ. of Jefferson Cty. Sch.  Dist. R-1 v. Wilder, 960 P.2d 695, 702–03 (Colo. 1998).[6]

 ¶13 The overbreadth doctrine represents a departure from “traditional rules of standing” in that it permits a litigant to challenge a statute not because his own constitutional rights have been violated, but because the very existence of an overly broad statute may deter others from exercising their First Amendment rights. Broadrick, 413 U.S. at 612; see also Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 798–99 (1984) (tracing the doctrine to Thornhill v. Alabama, 310 U.S. 88 (1940)); People v. Baer, 973 P.2d 1225, 1231 (Colo. 1999) (“[A] party may challenge a law as overbroad regardless of whether that party’s speech is constitutionally protected.”); Wilder, 960 P.2d at 703 (“Overbroad laws may be challenged even by parties whose speech is not protected by the First Amendment.”). The doctrine is predicated on the sensitive nature of protected expression and the risk that overly broad laws may deter individuals from exercising their free speech rights for fear of criminal sanctions; the doctrine therefore permits a litigant to challenge a statute as facially overbroad to vindicate the rights of others not before the court, even where the challenger’s own conduct is not protected. New York v. Ferber, 458 U.S. 747, 768–69 (1982); Dombrowski v. Pfister, 380 U.S. 479, 486–87 (1965) (noting that the Court has fashioned the overbreadth exception to the usual rules governing standing because of the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible to sweeping and improper application); see also Wilder, 960 P.2d at 703 (“Such facial challenges are permitted to protect the rights of third parties whose First Amendment rights may be ‘chilled’ by the law’s overbreadth.”). Because its application results in the facial invalidation of a statute,[7] the overbreadth doctrine is “strong medicine” that is employed “only as a last resort.” Ferber, 458 U.S. at 769 (quoting Broadrick, 413 U.S. at 613); see also Hickman, 988 P.2d at 636.

 ¶14 To succeed on an overbreadth challenge, a litigant must show that the overbreadth of the statute is both real and substantial, judged in relation to the statute’s plainly legitimate sweep. Broadrick, 413 U.S. at 615; see also Ferber, 458 U.S. at 773–74. The requirement of “substantial” overbreadth is derived from the purpose and nature of the doctrine: To justify facial invalidation of the statute, “there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.” Taxpayers for Vincent, 466 U.S. at 801.

 ¶15 In examining an overbreadth challenge, a court must first construe the challenged statute before it can determine whether a statute “criminalizes a substantial amount of protected expressive activity.” United States v. Williams, 553 U.S. 285, 297 (2008). The court should ascertain whether the statute encompasses any constitutionally protected activity before determining whether the statute extends to a “substantial” amount of protected activity. See Hickman, 988 P.2d at 636. Unless the statute reaches a substantial amount of constitutionally protected conduct, the overbreadth challenge must fail. Vill. of Hoffman Estates v. Flipside, 455 U.S. 489, 494 (1982). The “mere fact that one can conceive of some impermissible applications of a statute” is not sufficient to invalidate it on grounds of overbreadth. Taxpayers for Vincent, 466 U.S. at 800. If a statute encompasses protected speech but is not substantially overbroad, then whatever overbreadth may exist should be addressed on a case-by-case basis. Hickman, 988 P.2d at 635 (citing Broadrick, 413 U.S. at 615–16).

 ¶16 Finally, where possible, a court should construe a statute to avoid overbreadth problems. Aguilar v. People, 886 P.2d 725, 728 (Colo. 1994); Whimbush v. People, 869 P.2d 1245, 1248 (Colo. 1994). Thus, if a limiting construction or partial invalidation will confine the statute to sufficiently narrow applications, the court should apply such a construction or partial invalidation to preserve the statute’s constitutionality. Hickman, 988 P.2d at 636.

 2. Vagueness

 ¶17 The vagueness doctrine is rooted in principles of procedural due process. See Shell, 148 P.3d at 172. Due process requires laws to give fair warning of prohibited conduct so that individuals may conform their actions accordingly. Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); People v. Janousek, 871 P.2d 1189, 1195 (Colo. 1994). Due process also demands that a penal statute establish standards that are sufficiently precise to avoid arbitrary and discriminatory enforcement. Grayned, 408 U.S. at 109; People v. Batchelor, 800 P.2d 599, 603 (Colo. 1990). Thus, a conviction fails to comport with due process where it is obtained under a statute that is so vague that it “fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.” Williams, 553 U.S. at 304; Baer, 973 P.2d at 1233.

 ¶18 The degree of vagueness tolerated depends on the nature of the enactment; where the statute threatens to inhibit speech or expressive conduct protected by the First Amendment, the vagueness doctrine demands a greater degree of specificity. Smith v. Goguen, 415 U.S. 566, 573 (1974); Flipside, 455 U.S. at 498–99; Wilder, 960 P.2d at 704. That said, a law is not unconstitutionally vague simply because it could have been drafted with greater precision. Wilder, 960 P.2d at 703; see also People v. Allen, 657 P.2d 447, 449 (Colo. 1983) (observing that due process does not require “mathematical exactitude in legislative draftsmanship”). Rather, it is unconstitutional only if it “is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.” Wilder, 960 P.2d at 703 (quoting Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971)); see also Broadrick, 413 U.S. at 607 (holding that an impermissibly vague enactment is one that is so indeterminate that persons “of common intelligence must necessarily guess at its meaning”). To pass constitutional muster, the language must convey “sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.” Roth v. United States, 354 U.S. 476, 491 (1957) (internal quotation marks omitted). In sum, a statute satisfies due process requirements if its terms “are sufficiently clear to persons of ordinary intelligence to afford a practical guide for law-abiding behavior and are capable of application in an even-handed manner by those responsible for enforcing the law.” People v. Schoondermark, 699 P.2d 411, 415–16 (Colo. 1985).

 ¶19 Because due process objections to vagueness rest on lack of notice, such challenges cannot succeed in a case where reasonable persons would know that their conduct puts them at risk. See Maynard v. Cartwright, 486 U.S. 356, 361 (1988). Thus, when examining a vagueness claim, a court examines the challenger’s conduct before analyzing other hypothetical applications of the law to consider whether a statute is vague as applied to the particular facts at issue. Holder v. Humanitarian Law Project, 561 U.S. 1, 18–19 (2010); Flipside, 455 U.S. at 495; Parker v. Levy, 417 U.S. 733, 757 (1974) (a statute must be examined in light of the conduct with which a defendant is charged). A litigant who engages in conduct that is clearly proscribed by a statute cannot complain of the vagueness of the law as applied to the conduct of others. Flipside, 455U.S. at 495; Parker, 417 U.S. at 756 (“One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.”).

 ¶20 Finally, where a statute is challenged on the grounds of vagueness, we must attempt to construe the legislation in a manner that will satisfy constitutional due process requirements, if a reasonable and practical construction of the statute will achieve such a result. People v. Rostad, 669 P.2d 126, 127 (Colo. 1983).

 3. Conceptual Distinction Between Vagueness and Overbreadth

 ¶21 Overbreadth and vagueness are often treated together by courts and commentators and are frequently confused. See, e.g., 1 William J. Rich, Modern Constitutional Law § 7:6 (3d ed. 2011) (“Issues of vagueness and overbreadth often overlap, and it is not unusual to see challenges to statutes referring to both doctrines without distinguishing between them.”).
 ¶22 The doctrines serve similar purposes. As discussed above, prohibitions on both overbreadth and vagueness seek to prevent a chilling of the exercise of constitutional rights. Grayned, 408 U.S. at 109; Dombrowski, 380 U.S. at 490–91; Rich, supra, § 7:6. Both doctrines also seek to prevent arbitrary or discriminatory application at the margins of a statute’s fair reach. See Grayned, 408 U.S. at 108–09; NAACP v. Button, 371 U.S. 415, 435 (1963); Richard H. Fallon, Jr., Making Sense of Overbreadth, 100 Yale L.J. 853, 884, 904 (1991). Thus, a statute that sweeps in a substantial amount of protected expressive activity because it is unclear may be both unconstitutionally overbroad and impermissibly vague. See Rich, supra, § 7:6.

 ¶23 Yet the doctrines are based on different constitutional guarantees. The prohibition on vagueness derives from the Due Process Clause—not from the First Amendment, as with overbreadth. Williams, 553 U.S. at 304. While courts may demand greater clarity from a law that arguably infringes on constitutionally protected expression, the vagueness doctrine is ultimately rooted in due process. See Holder, 561 U.S. at 18; Flipside, 455 U.S. at 497. For this reason, the vagueness doctrine applies to a greater variety of enactments than overbreadth.

 ¶24 Often only one of the doctrines applies—for example, where a law is impermissibly imprecise yet avoids coming close to the bounds of what it may legitimately proscribe; or alternatively, where a law clearly proscribes certain conduct but in so doing, goes beyond what may be legitimately proscribed to reach constitutionally protected expression. See, e.g., People v. Chastain, 733 P.2d 1206, 1210 (Colo. 1987) (“The doctrines of overbreadth and vagueness are distinct . . . a statute may be clear yet may sweep too broadly and invade constitutionally protected freedoms.”); Erwin Chemerinsky, Constitutional Law: Principles and Policies § 11.2.2, at 977–78 (4th ed. 2011) (giving examples of laws that are overbroad but not vague and vice versa); Rich, supra, § 7:6 n.1 (noting that a vague statute that reaches only unprotected conduct may nonetheless violate due process principles); see also Holder, 561 U.S. at 19 (correcting a lower court for “merg[ing] plaintiffs’ vagueness challenge with their First Amendment claims [and] holding that portions of the . . . statute were unconstitutionally vague because they applied to protected speech—regardless of whether those applications were clear”). In sum, vagueness concerns the lack of clarity in the language of a statute, whereas overbreadth concerns the reach of a statute and its encroachment upon constitutionally protected speech or expressive conduct.

 B. Application

 ¶25 We now address the issues presented in this case. Where a litigant brings a facial challenge to the overbreadth and vagueness of a law, the court should first construe the statute and determine whether the enactment reaches constitutionally protected speech or expressive conduct. People v. Hickman, 988 P.2d 628, 636 (Colo. 1999); see also Williams, 553 U.S. at 293 (“The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.”). If the statute encompasses protected speech or expressive conduct, the court must determine whether it reaches a “substantial” amount of such activity such that the statute is unconstitutional, or whether unconstitutional applications should be cured on a case-by-case basis. Hickman, 988 P.2d at 636. The court should then examine the enactment for vagueness; assuming it does not implicate constitutionally protected expression, the law may be declared facially void for vagueness only if there is “no reliable way” to interpret, or “grave uncertainty” about, its scope. Johnson v. United States, 135 S. Ct. 2551, 2557–58 (2015).[8] Because an individual who engages in conduct that is clearly proscribed by the statute cannot challenge the vagueness of the law as applied to the conduct of others, a court should examine the vagueness of the law in light of the challenger’s conduct before analyzing other hypothetical applications of the law. Holder, 561 U.S. at 18–19; Flipside, 455 U.S. at 495.
 ¶26 Applying this framework, we first construe section 18-7-301(1)(d) of the public indecency statute. We then examine whether this provision is unconstitutionally overbroad or impermissibly vague.

 1. Construction of the Public Indecency Statute

 ¶27 Our goal in construing a statute is to ascertain and give effect to the intent of the General Assembly. Hickman, 988 P.2d at 634. In so doing, we interpret words and phrases used in statues according to their generally accepted meaning. Id. In addition, we examine particular statutory language in the context of the statute as a whole. Robinson v. Legro, 2014 CO 40, ¶ 18, 325 P.3d 1053, 1057.

 ¶28 The public indecency statute provides:

 (1) Any person who performs any of the following in a public place or  where the conduct may reasonably be expected to be viewed by members  of the public commits public indecency:

 
 (a) An act of sexual ntercourse; or * * *
 
 (c) A lewd exposure of an intimate part as defined by section 18-3-401(2) of the body, not including the genitals, done with intent to arouse or to satisfy the sexual desire of any person; or
 
 (d) A lewd fondling or caress of the body of another person; or
 
 (e) A knowing exposure of the person’s genitals to the view of a person under circumstances in which such conduct is likely to cause affront or alarm to the other person.

 § 18-7-301(1) (emphases added).[9]

 ¶29 Section 18-7-301(1) as a whole targets only overtly sexualized activity in public. Paragraphs (a) through (e) present the various means by which a person may commit “public indecency.” Paragraph (a) proscribes public sexual intercourse; paragraph (c) proscribes a lewd exposure of an intimate body part done with the intent to arouse or satisfy a person’s sexual desire; and paragraph (e) proscribes a knowing exposure of one’s genitals to another person in circumstances likely to cause affront or alarm to that person.

 ¶30 Paragraph (d) proscribes “lewd fondling or caress of the body of another person” in a “public place” or where the conduct “may reasonably be expected to be viewed by members of the public.” Viewed in context of the remainder of section 18-7-301(1), we conclude that the General Assembly intended paragraph (d) likewise to proscribe only overtly sexualized conduct in public. See Denver Post Corp. v. Ritter, 255 P.3d 1083, 1091 (Colo. 2011) (“To give effect to this phrase according to its plain and ordinary meaning, we interpret the word in the context of the statutory provision in which it is found.”).

 ¶31 Examining the language of paragraph (d) more closely, we first note that the term “public place” is defined in section 18-1-901(3)(n), C.R.S. (2015), to mean “a place to which the public or a substantial number of the public has access,” and includes, among other things, “places of amusement” and “the common areas of public and private buildings and facilities.” This definition encompasses a movie theater.

 ¶32 Next, the terms “fondling” or “caress” are essentially synonymous. To “caress” means “to touch or stroke in a loving or endearing manner; to fondle, embrace, or pet.” Webster’s Third New International Dictionary (2002). Similarly, to “fondle” means “to handle tenderly, lovingly, or lingeringly,” or to “caress.” Id. Graves does not challenge these terms and ascribes to them these ordinary meanings.

 ¶33 Subsection (1)(d) does not proscribe innocuous public displays of affection, such
 as hand-holding, hugging, or even kissing. Nor does it proscribe all fondling or caresses. Rather, subsection (1)(d) proscribes only “lewd” fondling or “lewd” caresses in a public place.[10] The term “lewd,” although undefined in the statute, is a word of common usage and people of ordinary intelligence need not guess at its meaning. See Winters v. New York, 333 U.S. 507, 518 (1948) (the terms “obscene, lewd, lascivious, filthy, indecent or disgusting” are words “well understood through long use in the criminal law”). “Lewd” is commonly understood to mean “sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, or salacious.” Webster’s Third New International Dictionary (2002); see also State v. Dinh Loc Ta, 290 P.3d 652, 661 (Kan. 2012) (relying on same dictionary definition to determine meaning of “lewd”); Black’s Law Dictionary  (10th ed. 2014) (defining “lewd” as “obscene or indecent; tending to moral impurity or wantonness”). The term connotes lustful or lascivious intent. Black’s Law Dictionary  (6th ed. 1990). “Touching that is ‘lewd’ is commonly understood to be contact that is indecent or offensive.” Commonwealth v. Kenney, 874 N.E.2d 1089, 1098 n.8 (Mass. 2007); see also City of Mankato v. Fetchenhier, 363 N.W.2d 76, 79 (Minn. Ct. App. 1985) (“The commonly accepted definition of lewdness is the quality of being openly lustful or indecent.”). Given the plain meaning of the term “lewd,” particularly in the context of the public indecency statute as a whole, we construe the phrase “lewd fondling or caress” in section 18-7-301(1)(d) to refer to lascivious conduct of an overtly sexualized nature.[11] See State v. Bagnes, 322 P.3d 719, 723–24 (Utah 2014) (construing the phrase “other acts of lewdness,” in context, to mean “lewdness marked by lasciviousness,” partly to avoid vagueness concerns).

 ¶34 With this interpretation in mind, we turn to Graves’s constitutional challenges.

 2. Overbreadth Challenge

 ¶35 Graves asserts that the public indecency statute is unconstitutionally overbroad because it reaches a substantial amount of constitutionally protected expressive activity. In reaching the conclusion that the statute is unconstitutionally overbroad, the district court did not identify what constitutionally protected speech or expressive conduct the statute purportedly prohibits, nor did it identify how the statute sweeps in a “substantial” amount of such protected activity. Graves likewise fails to develop any argument in his briefing on these points, other than to suggest that the statute could apply to actors who participate in a cinematic sex scene aired or shown in this state.

 ¶36 Sexual conduct in public is not constitutionally protected expressive activity. Indeed, in Arcara v. Cloud Books, Inc., 478 U.S. 697, 698–99, 705 (1986), the U.S. Supreme Court flatly rejected a claim that “illicit sexual activities” such as “masturbation, fondling, and fellatio” by patrons at an adult bookstore were constitutionally protected. The Court made clear that the First Amendment cannot be used “as a cloak for obviously unlawful public sexual conduct.” Id. at 705. Because we construe section 18-7-301(1)(d) to prohibit only overtly sexualized behavior in public, we conclude that the statute does not appear to reach any constitutionally protected speech or expressive activity.[12]

 ¶37 To the extent that Graves suggests that the statute could apply to a cinematic sex scene aired or shown in this state, such a recorded depiction is not actual sexual conduct carried out in public for purposes of section 18-7-301(1)(d) and therefore raises no question of overbreadth. To the extent such material may be obscene and therefore may be constitutionally regulated, it falls under Colorado’s obscenity statute, which has been closely drawn and narrowed over time to meet constitutional requirements. See § 18-7-101(2), C.R.S. (2015); People v. Ford, 773 P.2d 1059, 1072–74 (Colo. 1989) (Erickson, J., concurring in the result only).

 ¶38 Even assuming that some overtly sexual fondling or caressing may be expressive conduct protected under the First Amendment, the conduct potentially chilled by the legitimate enforcement of section 18-7-301(1)(d) is slight compared to the “easily identifiable and constitutionally proscribable conduct” to which the statute applies. People v. Shepard, 983 P.2d 1, 4 (Colo. 1999). Compare People v. Hickman, 988 P.2d 628, 640–41 (Colo. 1999) (concluding that, although a statute prohibiting the use of a threat against a witness or victim might reach some forms of protected speech, “the bulk of the speech covered by the statute is not protected”), with id. at 643 (holding that a prohibition on harassing a witness or victim in the same statute “includes a substantial amount of protected communications”).

 ¶39 In sum, we hold that section 18-7-301(1)(d) of the public indecency statute is not unconstitutionally overbroad.

 3. Vagueness Challenge

 ¶40 Graves contends that the term “lewd,” as used in the public indecency statute, is not sufficiently precise to give ordinary persons notice of the conduct the statute proscribes or to prevent arbitrary or discriminatory application. Pointing to cases from other jurisdictions, he argues that the meaning of the term “lewd” is “in the mind of the beholder” and fluctuates over time.

 ¶41 We examine Graves’s claim of vagueness in light of his conduct before analyzing other, hypothetical applications of the law. Holder v. Humanitarian Law Project, 561 U.S. 1, 18 (2010); Vill. of Hoffman Estates v. Flipside, 455 U.S. 489, 495 (1982); Parker v. Levy, 417 U.S. 733, 757 (1974) (statute must be examined in light of the conduct with which a defendant is charged). If Graves’s conduct is clearly proscribed by the statute, he cannot complain of the vagueness of the law as applied to the conduct of others. Flipside, 455 U.S. at 495; Parker, 417 U.S. at 756 (“One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.”). The People contend that Graves’s conduct was an “overtly sexual” touching of another’s body in a public place and that such conduct is clearly proscribed by the public indecency statute. We agree.

 ¶42 The theater in this case was a venue open to the public. In view of other patrons, Graves stroked another man’s erect penis through that man’s pants. Such lascivious conduct of an overtly sexualized nature in a public venue meets any reasonable definition of “lewd” and falls well within the scope of the public indecency statute as we have construed it. In short, Graves’s conduct in this case is so clearly within the ambit of section 18-7-301(1)(d) that he cannot claim that the statute failed to provide him fair warning. See Chroma Corp. v. Campbell, 619 P.2d 74, 77 (Colo. App. 1980) (rejecting vagueness challenge to regulation prohibiting “lewd or indecent displays” where challenger was “so clearly within the ambit of the type of conduct sought to be prohibited that it cannot be heard to assert that it was misled by the wording of the regulation”); see also 400 Club, Inc. v. Canjar, 523 P.2d 141, 142–43 (Colo. App. 1974) (rejecting liquor licensee’s vagueness challenge to regulation prohibiting “lewd or indecent displays” where conduct triggering the violation involved “a woman fondling the penis of a male patron” at the licensee’s liquor establishment); Fetchenhier, 363 N.W.2d at 79 (rejecting defendant’s vagueness challenge to statute because defendant could have had no reasonable doubt that fondling a woman’s thigh and buttocks as she bent down to examine merchandise at a store amounted to “open or gross lewdness or lascivious behavior” or “public indecency”). Any reasonable person in Graves’s position would have understood that his conduct was lewd. Cf. Bd. of Educ. of Jefferson Cty. Sch. Dist. R-1 v. Wilder, 960 P.2d 695, 704–05 (Colo. 1998) (holding that any reasonable teacher in the defendant’s position would have concluded that the District’s controversial materials policy clearly applied to a sexually explicit, R-rated film). Accordingly, we conclude that section 18-7-301(1)(d) is not vague as applied to Graves’s conduct. Because Graves’s conduct in this case is clearly proscribed by the statute, he cannot complain of the vagueness of the law as applied to the conduct of others. Flipside, 455 U.S. at 495; Parker, 417 U.S. at 757.[13]

 IV. Conclusion

 ¶43 We reverse the district court’s order holding that section 18-7-301(1)(d) is
 unconstitutionally overbroad and vague.[14]

 [1] This court has jurisdiction to hear a direct appeal of a district court’s determination that a statute is unconstitutional. § 13-4-102(1)(b), C.R.S. (2015). Because this case originated in county court, however, we review the district court’s order affirming the county court’s ruling via a discretionary writ of certiorari. See § 13-6-310(4), C.R.S. (2015).

 [2] The People originally charged Graves with “lewd exposure of an intimate part” with intent to arouse or satisfy the sexual desire of another, in violation of section 18-7-301(1)(c). Paragraph (c), however, excludes exposure of the genitals. The People subsequently amended the complaint to charge instead a violation of paragraph (d) (“lewd fondling or caress”).

 [3] These motions also challenged section 18-7-301(1)(c) on the same grounds. As noted, however, the People amended the complaint to remove the charge under paragraph (c).

 [4] Crim. P. 37 authorizes the district attorney to appeal a question of law to the district court. In addition, section 16-12-102(1), C.R.S. (2015), requires the district attorney to appeal an order adjudging a statute unconstitutional in a criminal case.

 [5] We granted certiorari to review the following issue:

 
 Whether the district court erred when it concluded that subsection (1)(d) of C.R.S. section 18-7-301, the Public Indecency statute, was unconstitutionally vague and overbroad and affirmed the county court’s dismissal of that charge as unconstitutional.

  

 [6] In the past, this court has suggested that the overbreadth doctrine potentially applies to other forms of constitutionally protected conduct besides expression protected by the First Amendment. See, e.g., People v. Shepard, 983 P.2d 1, 3–4 (Colo. 1999) (rejecting overbreadth challenge to wiretapping statute, reasoning that the possibility that the statute “infringes upon a parent’s right to privacy in familial matters” was slight); People v. Gross, 830 P.2d 933, 939 (Colo. 1992) (rejecting overbreadth challenge to definition of “knife” within the statute prohibiting possession of a weapon by a convicted felon, without reaching determination of whether possession of a screwdriver was constitutionally protected conduct). However, the U.S. Supreme Court has made clear that the overbreadth doctrine is confined to facial challenges to statutes that burden constitutionally protected speech or expressive conduct. United States v.  Salerno, 481 U.S. 739, 745 (1987) (“[W]e have not recognized an ‘overbreadth’ doctrine outside the limited context of the First Amendment.”).

  

 [7] A litigant may, of course, seek to show that a statute is unconstitutional as applied to his own conduct because it curtails his First Amendment rights. Occasionally, we have labeled such a claim an “as-applied” overbreadth challenge. See, e.g., People v. Janousek, 871 P.2d 1189, 1194 (Colo. 1994); People v. Batchelor, 800 P.2d 599, 603 (Colo. 1990). Such a label is confusing, however. We now clarify that a claim of “overbreadth” refers to a claim of facial invalidity.>

 [8] Johnson appears to have backed away from the position in Flipside, 455 U.S. at 497, that a statute may be declared facially void for vagueness only if it is “impermissibly vague in all its applications.” 135 S. Ct. at 2560–61 (“[A]lthough statements in some of our opinions could be read to suggest otherwise, our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision’s grasp.”); see also Shell, 148 P.3d at 172 (observing that, to succeed on a claim that a law is facially void for vagueness, a challenger must show that it is “incomprehensible in all of its applications”). Importantly, however, Johnson began its analysis of the residual clause of the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B)(ii), by stating that there was “grave uncertainty” about what conduct the clause would reach, and that there was “no reliable way” to determine its scope. 135 S. Ct. at 2557–58. Here, by contrast, there is no such “grave uncertainty” about, or lack of “reliable” method for determining, the scope of section 18-7-301(1)(d); as we conclude in this opinion, this provision applies only to overtly sexualized activity in public. We therefore need not further consider Johnson’s impact on the “impermissibly-vague-in-all-its-applications” standard.

 [9] Paragraph (b) was deleted in 2010. Ch. 359, sec. 1, 2010 Colo. Sess. Laws 1707.

 [10] Graves suggests that the term “lewd” modifies only “fondling” but not “caress.” We disagree and conclude that the term “lewd” in paragraph (d) modifies both “fondling” and “caress.” It is implausible that the General Assembly intended to proscribe all caresses that occur in public. Cf. People v. Moore, 2013 COA 86, ¶ 13, 338 P.3d 348, 350 (reading the phrase “any public official or employee” in the statute that prohibits impeding such a person in the lawful performance of his or her duties to mean any public official or public employee). We therefore construe section 18-7-301(1)(d) of the public indecency statute to target lewd fondling and lewd caresses.

 [11] The district court’s concern that the statute could be applied to a nursing mother is misplaced. Such activity does not meet the definition of a “lewd fondling or caress” as construed in this opinion; moreover, Colorado law permits a mother to breast-feed an infant “any place she has a right to be.” § 25-6-302, C.R.S. (2015).

 [12] We note that the liberty interest under the Fourteenth Amendment’s Due Process Clause to engage in consensual sexual intimacy in “a dwelling or other private places,” recognized in Lawrence v. Texas, 539 U.S. 558, 562 (2003), does not extend to public places such as the theater in this case. Cf. 832 Corp. v. Gloucester Twp., 404 F. Supp. 2d 614, 622–25 (D.N.J. 2005) (holding that Lawrence does not suggest that the constitutional right to engage in consensual sexual conduct extends to a public nightclub). The legislature is free to criminalize sex in places that the liberty interest in consensual sex—as that interest is defined by the Supreme Court—does not reach.

 [13] We note that Graves raises no allegations of an equal protection violation based on selective prosecution. See, e.g., United States v. Armstrong, 517 U.S. 456, 464–65 (1996) (equal protection requires that a decision to prosecute may not be based on “an unjustifiable standard such as race, religion, or other arbitrary classification” (internal citation omitted)).
 [14] The People do not seek reinstatement of the charges; therefore, remand is unnecessary.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Supreme Court Opinions || February 29, 2016

Back