CHIEF JUSTICE RICE,
dissenting.
¶ 32 Applying what it views to be the plain language of Amendment 64 to the Colorado Constitution, Colorado Constitution article XVIII, section 16(3)(b), and sections 18-18-102(17) and 18-18-406(2)(a)(I), C.R.S. (2012), the majority concludes that hash-oil extraction via the butane method is “manufacturing” marijuana or marijuana concentrate and therefore affirms Lente’s conviction for manufacturing marijuana or marijuana concentrate. Maj. op. ¶ 3. In my view, however, the butane method of hash-oil extraction falls under the definition of “processing,’’ which Amendment 64 legalized. Further, the statutory scheme under which Lente was convicted defined “manufacturing” and “processing” as separate terms and — in another section— defined “manufacturing” as including the term “processing.” Therefore, the statutory scheme was so vague that an ordinary person would not have known that it proscribed hash-oil extraction via butane, and Lente’s conviction should be vacated. Accordingly, I respectfully dissent.
I. Analysis
¶ 33 I begin by considering whether, under the plain language of the Controlled Substances Act (“CSA”), sections 18-18-101 to - 605, C.R.S. (2012), and Amendment 64, hash-oil extraction via butane could qualify as “processing” marijuana or marijuana concentrate. From there, I determine that, under the plain language of the statute, hash-oil extraction via butane qualifies as “processing.” Second, I conclude that, in any event, due to confusion over the interplay between the terms “manufacturing” and “processing,” the' statute as applied to Lente is overly vague and his conviction for manufacturing marijuana or marijuana concentrate should be vacated. Finally, I argue that because of the vagueness of the existing law, we should apply the rule of lenity to Lente.
A. The Butane Extraction Method is “Processing”
¶ 34 Amendment 64 to the Colorado State Constitution- legalized, for “persons twenty-one years of age or older,’’.“processing no more than six marijuana plants[.]” Colo. Const, art. XVIII, § 16(3)(b). This case hinges on whether hash-oil extraction via butane qualifies as “processing” — and thus is legal— or if it is “manufacturing] any marijuana or marijuana concentrate” and therefore is illegal under section 18-18-406(2)(a)(I).
¶ 35 As the majority noted, Amendment 64 displaces portions of the CSA, and, therefore, the CSA controls whether the terms “manufacturing” and “processing” had settled meanings at the time. Amendment 64 was enacted. See maj. op. ¶ 20.
*835 ¶ 36 Under se.etion 18-18-406(2)(a)(I), “[i]t is unlawful for a person to knowingly process or manufacture any marijuana or marijuana concentrate[.]” If we were to look only at subsection 406(2)(a)(l), we would conclude that “process” and “manufacture” must have independent meanings. See maj. op. ¶ 21; Cherry Hills Resort Dev. Co. v. City of Cherry Hills Vill., 790 P.2d 827, 830 (Colo. 1990) (“A statute or ordinance should be construed so as to give effect to every word, and a construction should not be adopted which renders a word superfluous”).
¶ 37 But subsection 406(2)(a)(l) is not the only portion of the CSA that discusses processing, and manufacturing. In subsection 18-18-102(17), the CSA states that “‘manufacture’ means to produce, prepare, propagate, compound, convert, or process a controlled .substance, directly or indirectly, by extraction from substances of natural origin, chemical synthesis, or a combination of extraction and chemical synthesis.” (Emphasis added.) Therefore, under the CSA’s own definitions, “ ‘manufacture’ means ... process.” If “manufacture” includes “process,” the Wo cannot be separate and distinct.
¶38 Further, subsection 102(17) states that “ ‘manufacture’ means to ... process ... directly or indirectly, by extraction from substances of natural origin, chemical synthesis, or a combination of extraction, and chemical synthesis.” (Emphasis added.) Reading the statute with only the relevant language, it states that manufacture means to process by extraction from substances of natural origin. Therefore the phrase “by extraction from substances of natural origin” modifies both the term “to process” and the other terms preceding it (“produce, prepare, propagate, compound, convert”). Webster’s Dictionary also supports this reading, as it defines “process” as “to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result,” “to prepare for market, manufacture, or other commercial use by subjecting to some process,” or “to make usable by special treatment.” Process, Webster’s -Third New International Dictionary (unabr. ed. 2002), The majority opinion, in contrast, does not even attempt to define the term “process” and.merely states that “manufacturing means extraction or chemical synthesis, and processing must mean something else.” See maj. op. ¶ 23 (emphasis added).
¶ 39 The butane method of hash-oil extraction uses butane as a chemical solvent to extract tetrahydrocannabinol (“THC”) from marijuana plants. See maj. op. ¶ 14. Subsection 102(17) defines “process” as “extraction from substances of natural origin,” and Lente was extracting THC from marijuana. Therefore, under the clear, unambiguous language of the statute and Amendment 64, Lente was “processing” marijuana plants— conduct which Amendment 64 legalized.
B. ‘ The Current Statutory Scheme is Vague as'Applied to Lente
. ¶ 40 Even assuming the statutory language is not clear that Lente’s actions qualified as “processing,” Lente’s conviction for manufacturing marijuana or marijuana concentrate should be vacated because the CSA, in conjunction .with Amendment,, 64, is vague. Vagueness es a doctrine “rooted in principles of due process,” which “requires laws to give fair warning of prohibited .conduct so that individuals may conform their actions accordingly.” People v. Graves, 2016 CO 15, ¶ 17, 368 P.3d 317, 324, Under this doctrine, a criminal law must “establish standards that are sufficiently precise to avoid arbitrary and discriminatory enforcement.” Id. A conviction fails to comport with due process because of vagueness when the law “fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages.seriously discriminatory enforcement.” M.
¶41 Here, two sections, of the CSA define “manufacturing” and “processing” differently. One, section 18-18-406(2)(a)(I), treats the two as different terms. But section 18-18-102(17) states that the definition of “manufacture” includes the word “process.” Under the current Colorado statutory scheme and Amendment 64, “manufacturing” is illegal, but “processing” is not.
¶ 42 Webster’s Dictionary confirms the similarity, between the two terms. As noted above, Webster’s defines “process” as “to subject to a particular method, system, or technique of preparation, handling, or other *836 treatment designed to effect a particular result,” “to prepare for market, manufacture, or other commercial use by subjecting to some process,” or “to make usable by special treatment.” Process, Webster’s Third New International Dictionary (unabr. ed. 2002). In contrast, Webster’s Dictionary defines “manufacture” as “to make (as raw material) into a product suitable for use” and as “to make from raw materials by hand or by machinery.” Manufacture, Webster’s Third New International Dictionary (unabr. ed. 2002). Arguably, Lente’s hash-oil extraction could fit under either the definition of “manufacture” or “process.” Lente “manufactured” a raw material (marijuana plants) into something more suitable to his use (hash oil), and he “processed” marijuana plants by subjecting the plants to a particular method (butane extraction) designed to create a particular result (hash oil). One could even combine the terms and argue that Lente “processed ... marijuana plants” in order to “manufacture” hash oil. But in any event, with conflicting readings of the various terms “manufacture” and “process,” the statutory scheme in place was not sufficiently clear so as to put a person of ordinary intelligence on notice that hash-oil extraction via butane was proscribed.
¶ 43 Finally, this is a case in which the intents of the electorate and the General Assembly remain obscured after “utilizing the various aids of statutory construction,” and therefore I believe we should turn to the rule of lenity. See People v. Summers, 208 P.3d 251, 258 (Colo. 2009). “The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.” United States v. Santos, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). In this case there exist “two competing and viable alternatives” to interpreting the statutory language and Amendment 64. Therefore we should apply the rule of lenity in favor of Lente. See Summers, 208 P.3d at 258.
II. Conclusion
¶ 44 For these reasons, I would vacate Lente’s conviction for manufacturing marijuana or marijuana concentrate. Accordingly, I would affirm the judgment of the court of appeals. I therefore respectfully dissent.
I am authorized to state that JUSTICE GABRIEL joins in this dissent.