Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 48**

**No. 15SC462, Gessler v. Smith—Amendment 41—Independent Ethics Commission—Jurisdiction.**

The supreme court considers whether Colorado's Independent Ethics Commission ("the IEC") had jurisdiction pursuant to article XXIX of the state constitution to hear a complaint based on allegations that then-Secretary of State Scott Gessler ("the Secretary") breached the public trust by using money from his statutorily-provided discretionary fund for partisan and personal purposes. The IEC investigated the complaint, held an evidentiary hearing, and determined that the Secretary's conduct breached the public trust. The Secretary sought judicial review of the IEC's ruling, arguing that the IEC lacked jurisdiction over the case; the relevant jurisdictional language must be narrowly construed to avoid unconstitutional vagueness; and the IEC violated his procedural due process rights. Both the district court and the court of appeals affirmed the IEC's ruling.

The supreme court holds that relevant jurisdictional language in article XXIX, section 5 of the state constitution authorizes the IEC to hear complaints involving ethical standards of conduct relating to activities that could allow covered individuals,

including elected officials, to improperly benefit financially from their public employment. The supreme court further holds that section 24-18-103, C.R.S. (2017), is one such ethical standard of conduct. This provision establishes that the holding of public office or employment is a public trust, and that a public official "shall carry out his duties for the benefit of the people of the state." Because the allegations against the Secretary clearly implicated this standard, the supreme court concludes that the complaint fell within the IEC's jurisdiction and rejects the Secretary's jurisdictional and vagueness challenges. Additionally, the supreme court rejects the Secretary's procedural due process claim because he failed to demonstrate that he suffered any prejudice as a result of the alleged violation. Accordingly, the supreme court affirms the judgment of the court of appeals.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 48

### Supreme Court Case No. 15SC462
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA670

### Petitioner:

Scott Gessler, individually and in his official capacity as Colorado Secretary of State,

v.

### Respondents:

Matt Smith, April Jones, William Leone, Gary Reiff, and Jo Ann Sorensen, in their official capacities as members of the Independent Ethics Commission, and the Independent Ethics Commission.

### Judgment Affirmed
*en banc*
June 4, 2018

**Attorneys for Petitioner:**
MRD Law
Michael Francisco, Special Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondents:**
Cynthia H. Coffman, Attorney General
Russell B. Klein, Deputy Attorney General
Natalie L. Powell, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Counties, Inc.:**
Hall & Evans, L.L.C.
Thomas J. Lyons
Kelley G. Shirk
   *Denver, Colorado*

**Attorney for Amicus Colorado Municipal League:**
Geoffrey T. Wilson
   *Denver, Colorado*

**Attorney for Amicus Curiae Colorado Ethics Watch:**
Luis Toro
   *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE GABRIEL** does not participate.

¶1 Under section 24-9-105(1), C.R.S. (2017), each of Colorado's five statewide elected officials, including the Secretary of State, has access to a modest annual discretionary fund to spend "in pursuance of official business." In August 2012, then-Secretary of State Scott Gessler ("the Secretary") used $1,278.90 from this discretionary fund to travel to Florida to attend an election law seminar hosted by the Republican National Lawyers Association and thereafter attend the Republican National Convention. Before his trip to Florida, the Secretary also requested "any remaining funds" in his discretionary fund account as reimbursement, without submitting documentation of mileage or other expenses incurred. Colorado Ethics Watch filed a complaint about these activities with the state's Independent Ethics Commission ("the IEC"), which has authority to address complaints on "ethics issues arising under [article XXIX of the Colorado Constitution] and under any other standards of conduct and reporting requirements as provided by law." Colo. Const. art. XXIX, § 5(1).

¶2 Following an investigation and evidentiary hearing, the IEC determined that the Secretary breached the public trust by using his discretionary funds for partisan and personal purposes. It ordered the Secretary to personally pay a penalty of $1,514.88.

¶3 The Secretary sought judicial review of the IEC's ruling, arguing that the IEC lacked jurisdiction over the case and violated his procedural due process rights. Both

3

the district court and the court of appeals affirmed the IEC's ruling. We granted the Secretary's petition for certiorari review.[1]

¶4 The Secretary argues that the IEC's jurisdiction is limited to matters involving gifts, influence peddling, and standards of conduct and reporting requirements that expressly delegate enforcement to the IEC. We disagree.

¶5 The IEC was created in 2006 by Amendment 41, a voter initiative that added article XXIX ("Ethics in Government") to the Colorado Constitution. The overarching focus of article XXIX is the regulation of activities that allow covered individuals working in government, including elected officials, to gain improper personal financial benefit through their public employment. Given this focus, we hold that the reference in article XXIX, section 5 to the IEC's authority to hear complaints under "any other standards of conduct . . . as provided by law" means ethical standards of conduct relating to activities that could allow covered individuals to improperly benefit

_____

[1] We granted certiorari to review the following issues:

1. Whether the Independent Ethics Commission has jurisdiction under the phrase "any other standards of conduct" in Colo. Const. art. XXIX, section 5(1) to penalize any public employee for violating any Colorado law.

2. Whether the phrase "other standards of conduct" in Colo. Const. art. XXIX, section 5(1) is unconstitutionally vague.

3. Whether procedural due process requires pre-hearing notice to explain how laws are violated, or may notice simply list laws and reserve the right to add charges after the hearing.

financially from their public employment. We further hold that section 24-18-103, C.R.S. (2017), which appears in part 1 ("Code of Ethics") of article 18 ("Standards of Conduct") establishes an ethical standard of conduct subject to the IEC's jurisdiction. This provision establishes that the holding of public office or employment is a public trust, and that a public official "shall carry out his duties for the benefit of the people of the state." § 24-18-103(1). Because the allegations against the Secretary clearly implicated this standard, we hold that the complaint here fell within the IEC's jurisdiction. Further, because we conclude that the IEC's jurisdiction over this case was proper and that the allegations against the Secretary were within the scope of the IEC's jurisdiction, we reject the Secretary's jurisdictional challenge, as well as his vagueness challenge. Finally, we reject the Secretary's procedural due process claim because he failed to demonstrate that he suffered any prejudice as a result of the allegedly deficient notice. Accordingly, we affirm the judgment of the court of appeals.

## I. Facts and Procedural History

¶6     In August 2012, the Secretary flew to Tampa, Florida to attend and speak at the "National Election Law Seminar," a two-day continuing legal education conference sponsored by the Republican National Lawyers Association ("the RNLA"). From August 23 through August 25, the Secretary stayed at a hotel in Sarasota, where the RNLA conference was held. On August 26, the Secretary traveled to Tampa, Florida, to attend the Republican National Convention ("the RNC"). The total cost of the Secretary's airfare to Florida and his lodging from August 23 through August 25 in

Sarasota was $1,278.90. The Secretary paid this amount out of his discretionary fund established by section 24-9-105, C.R.S. (2017). The Secretary paid for his lodging and meal expenses associated with his attendance of the RNC from his campaign funds.

¶7 In July 2012, before traveling to Florida, the Secretary requested reimbursement of "any remaining discretionary funds" in his discretionary fund account but did not provide any receipts or documentation supporting this request at the time. The Secretary received $117.99 as a result of this request.

¶8 Colorado Ethics Watch filed a complaint against the Secretary with the IEC, alleging that he had misappropriated state funds for personal or political uses and made false statements on travel expense reimbursement requests. Colorado Ethics Watch's complaint, which effectively consisted of a letter it had sent to the chief of police and the district attorney,[2] claimed that the Secretary's conduct may have violated certain provisions of the Colorado Criminal Code, including section 18-8-404, C.R.S. (2017) (first degree official misconduct); section 18-8-407, C.R.S. (2017) (embezzlement of public property); and section 18-8-114, C.R.S. (2017) (abuse of public records). The complaint argued that the fact that some payments for the Secretary's Florida trip apparently came from his statutory discretionary fund "d[id] not alter the analysis," because those funds may be spent only in pursuance of official business, and the Florida

---

[2] The chief of police and district attorney declined to charge the Secretary with any wrongdoing.

trip was "manifestly personal and political." The IEC determined that the complaint was nonfrivolous and appointed an independent investigator.

¶9 Following the investigation, the IEC set a hearing on the complaint and issued a prehearing order that listed the "standards of conduct and/or reporting requirements" that "may apply to this case." The order made no reference to the criminal code provisions originally cited by Colorado Ethics Watch in its complaint. Instead, as relevant here, the order listed section 24-18-103, C.R.S. (2017), which states that the holding of public office is a "public trust," and that "[a] public officer . . . shall carry out his [or her] duties for the benefit of the people of the state." In addition, the order listed section 24-9-105, which establishes discretionary funds for Colorado's five statewide elected officials[3] to use for "expenditure[s] in pursuance of official business as each elected official sees fit," and also listed the state fiscal rules concerning travel.[4] The order noted that "the IEC reserves the right to consider additional standards of conduct and/or reporting requirements, depending on the evidence presented, and the arguments made, at the hearing in this matter."

---

[3] The discretionary fund statute identifies the following as Colorado's five statewide elected officials: the Governor, the Lieutenant Governor, the Attorney General, the Secretary of State, and the State Treasurer. § 24-9-105(1)(a)–(e).

[4] The prehearing order also cited section 24-17-102(1), C.R.S. (2017) (requiring principal departments in the executive branch to institute and maintain systems of internal accounting), and section 24-30-202(26), C.R.S. (2017) (requiring the State Controller to promulgate fiscal rules concerning travel policies applicable to state employees).

¶10 At an evidentiary hearing, the IEC heard over eleven hours of testimony from eight witnesses and received over sixty exhibits. Documents submitted into evidence reflected that the RNLA's mission "includes support for Republican Party ideals, platforms and candidates"; that the seminar registration form required participants to state that they support the RNLA's mission; and that more than one of the topics at the conference "were concerned primarily with partisan values and/or politics." With respect to his attendance at the RNLA seminar, the Secretary claimed he incurred expenses "while meeting with constituents, county clerks, lobbyists, staff and legislators to discuss state business," but could not recall specific meetings with county clerks, staff, or legislators. The Secretary also testified that he sought the "remaining discretionary funds" in the account essentially as a mileage reimbursement, but did not submit documentation because "to go through every single penny and mile and whatnot it just ended up being a waste of time." So, he accepted the remaining $117.99 in the fund, intending to treat it as additional taxable compensation.

¶11 In a written order, the IEC found that the Secretary's use of $1,278.90 in funds from his discretionary account "to fly to Florida to attend the RNLA conference and thereafter attend the RNC" was primarily for partisan, and therefore personal, purposes. The Commission further found that the Secretary's acceptance of reimbursement of the $117.99 balance of his discretionary account, without documentation or detail of expenses incurred, was personal and not in pursuance of official business. The IEC concluded that the Secretary's actions "violated the ethical

8

standard of conduct contained in C.R.S. section 24-9-105" by using funds from his discretionary account for other than official business. In so doing, the Secretary "breached the public trust for private gain in violation of C.R.S. section 24-18-103(1)" by using public funds for personal and political purposes. The IEC imposed a penalty of $1,514.88.[5]

¶12 The Secretary sought judicial review of the IEC's order, asserting that the IEC exceeded its jurisdiction; that its findings of fact were arbitrary and capricious; and that it violated the Secretary's rights to due process, free speech, and assembly. The district court rejected these arguments, and affirmed the IEC's decision in a detailed written order.

¶13 The Secretary appealed the district court's decision to the court of appeals. Relevant here, the Secretary argued that the IEC lacked jurisdiction over this case because article XXIX, section 5 of the Colorado Constitution should be construed to limit the IEC's jurisdiction to matters involving gifts, influence peddling, and standards of conduct and reporting requirements that expressly delegate enforcement to the IEC. The Secretary further argued that these limitations must be read into section 5 to avoid unconstitutional vagueness and overbreadth. Finally, the Secretary argued that the IEC

---

[5] This penalty represented the discretionary fund amounts at issue, which were doubled in accordance with article XXIX, section 6 of the Colorado Constitution (($1278.90 x 2) + ($117.99 x 2) = $2793.78), minus a credit for $1278.90 that the Secretary returned to the state shortly before the IEC hearing.

violated his procedural due process rights by failing to provide adequate notice of the claims against him.

¶14    In a unanimous, published opinion, the court of appeals affirmed the judgment of the district court.  Gessler v. Grossman, 2015 COA 62.  The court concluded that the plain language of article XXIX, section 5 "contains no requirement that the referenced standards of conduct and reporting requirements expressly delegate enforcement to the IEC."  Id. at ¶ 16.  The court further reasoned that, even assuming that section 5 requires specific standards of conduct, both section 24-18-103 (the public trust statute) and section 24-9-105 (the discretionary fund statute) prescribe such standards, and thus fall within the ambit of the IEC's jurisdiction.  Id. at ¶¶ 18–31.  Based on its interpretation of the scope of the IEC's jurisdiction, the court rejected the Secretary's vagueness and overbreadth challenges.  Id. at ¶¶ 32–36.  The court also concluded that the IEC did not violate the Secretary's procedural due process rights because the commission provided him with adequate notice of the claims against him.  Id. at ¶¶ 54–57.  It reasoned that the record belied any claim of prejudice to the Secretary in any event.  Id. at ¶ 58.

¶15    We granted the Secretary's petition for certiorari review.

## II.  Analysis

¶16    This case requires us to consider the meaning of language in article XXIX, section 5 giving the IEC authority to hear complaints on "other standards of conduct . . . as provided by law."  In light of the overarching focus of article XXIX, we conclude that this phrase is most naturally read to mean ethical standards of conduct relating to

activities that could allow covered individuals to improperly benefit financially from their public employment.

¶17    Next, we conclude that section 24-18-103 (providing that the holding of public office or employment is a public trust, and that a public official "shall carry out his duties for the benefit of the people of the state") establishes an ethical standard of conduct subject to IEC jurisdiction. The allegations against the Secretary clearly implicated this standard. Accordingly, we hold that the complaint fell within the IEC's jurisdiction. Because we conclude that the IEC's jurisdiction over this case was proper and that the allegations against the Secretary were within the scope of the IEC's jurisdiction, we reject the Secretary's jurisdictional challenge, as well as his vagueness challenge. Finally, we reject the Secretary's procedural due process claim because he failed to demonstrate that he suffered any prejudice from the allegedly deficient notice.

## A.  Standard of Review

¶18    The interpretation of a constitutional provision is a question of law that we review de novo. Bruce v. City of Colorado Springs, 129 P.3d 988, 992 (Colo. 2006). Because article XXIX was added to the state constitution through a constitutional amendment adopted by citizen initiative, our duty is to give effect to the electorate's intent in enacting the amendment. See Colorado Ethics Watch v. Senate Majority Fund, LLC, 2012 CO 12, ¶ 20, 269 P.3d 1248, 1253; Davidson v. Sandstrom, 83 P.3d 648, 654 (Colo. 2004). To determine the voters' intent, we "give words their ordinary and popular meaning." Colorado Ethics Watch, ¶ 20, 269 P.3d at 1253–54 (quoting

11

Davidson, 83 P.3d at 654). If the language of the constitutional provision is clear and unambiguous, then it must be enforced as written. Id. at 1254. "If, however, the language of an amendment is susceptible to multiple interpretations, then we 'construe the amendment in light of the objective sought to be achieved and the mischief to be avoided by the amendment.'" Id. (quoting Zaner v. City of Brighton, 917 P.2d 280, 283 (Colo. 1996)). We consider a constitutional amendment "as a whole and, when possible, adopt an interpretation of the language which harmonizes different constitutional provisions rather than an interpretation which would create a conflict between such provisions." Zaner, 917 P.2d at 283.

## B. Article XXIX of the Colorado Constitution

¶19 In 2006, the voters of Colorado approved Amendment 41, which added article XXIX to the Colorado Constitution, titled "Ethics in Government." Colo. Const. art. XXIX. Section 1 of article XXIX sets forth the purposes of Amendment 41. It emphasizes that "[t]he conduct of public officers, members of the general assembly, local government officials, and government employees must hold the respect and confidence of the people" and that these individuals must "carry out their duties for the benefit of the people of the state." Id. at § 1(1)(a)–(b); see also Developmental Pathways v. Ritter, 178 P.3d 524, 526 (Colo. 2008). Covered individuals "shall, therefore, avoid conduct that is in violation of their public trust." Colo. Const. art. XXIX, § 1(1)(c). Importantly, "[a]ny effort" by covered individuals to "realize personal financial gain

12

through public office other than compensation provided by law is a violation of that trust." Id. at § 1(1)(d).

¶20 Section 2 of article XXIX defines various terms in the Amendment, including identifying the individuals to whom the article applies. Relevant here, section 2 defines "public officer" to mean "any elected officer, including all statewide elected officeholders, the head of any department of the executive branch, and elected and appointed members of state boards and commissions." Id. at § 2(6). As a statewide elected officeholder, the Secretary of State is a public officer for purposes of article XXIX. See id.

¶21 Consistent with the declaration in section 1 that "[a]ny effort" by covered individuals to realize improper "personal financial gain" through public office is a violation of their public trust, sections 3 and 4 of article XXIX expressly prohibit certain conduct that could lead to such improper gain. Section 3 creates a "gift ban," subject to limited exceptions, which prohibits public officers, General Assembly members, local government officials, or government employees from soliciting, accepting, or receiving money or gifts from any person without such person receiving lawful consideration of equal or greater value in return. Id. at § 3. Section 4 creates a lobbying restriction, which prohibits a statewide elected officeholder or General Assembly member from representing "another person or entity for compensation before any other statewide elected officeholder or member of the general assembly" within two years of vacating office. Id. at § 4.

13

¶22    Section 5 of article XXIX, which lies at the heart of this case, creates the IEC.  The purpose of the commission is to "hear complaints, issue findings, and assess penalties, and also to issue advisory opinions, <u>on ethics issues arising under this article and under any other standards of conduct and reporting requirements as provided by law</u>."  <u>Id.</u> at § 5(1) (emphasis added).  Article XXIX does not further define "other standards of conduct" for purposes of the IEC's jurisdiction.  The remainder of section 5 addresses other aspects of the IEC and its duties, including the commission's rulemaking authority, how members to the commission are appointed, and the commission's process for investigating and hearing a complaint.  <u>See</u> <u>id.</u> at § 5(1)–(5).

¶23    Section 6 of article XXIX provides that covered individuals who "breach[] the public trust for private gain" are liable for "double the amount of the financial equivalent of any benefits obtained by such actions."  <u>Id.</u> at § 6.

¶24    The final three sections of article XXIX permit counties and municipalities to adopt nonconflicting ordinances or provisions pertaining to ethics matters, <u>see</u> <u>id.</u> at § 7; declare any conflicting statutory provisions to be preempted by article XXIX, <u>see</u> <u>id.</u> at § 8; and authorize the General Assembly to enact legislation to facilitate the article's operation, <u>see</u> <u>id.</u> at § 9.

¶25    Viewed as a whole, the overarching focus of article XXIX is the regulation of activities that allow covered individuals working in government, including elected officials, to gain improper personal financial benefit through their public employment. Section 1 requires covered individuals to "carry out their duties for the benefit of the

14

people of the state" and to "avoid conduct that is in violation of their public trust." Id. at § 1(1)(b)–(c). It further provides that "[a]ny effort" by covered individuals to "realize personal financial gain through public office other than compensation provided by law is a violation of that trust." Id. at § 1(1)(d). Sections 3 and 4 target certain conduct that could allow covered individuals to use their positions to gain personal financial benefit. Specifically, section 3 discourages individuals working in government from using their influence to improperly solicit gifts, while section 4 discourages elected officials from leveraging their current positions to achieve financial benefits in the form of favorable future employment. Finally, section 6 provides that covered individuals who "breach[] the public trust for private gain" are financially liable for such improper conduct. Id. at § 6.

¶26     Viewed in isolation, the phrase "other standards of conduct . . . as provided by law" in section 5 may appear ambiguous. But in light of the overarching focus of article XXIX, we conclude that the phrase "other standards of conduct . . . as provided by law" is most naturally read to refer to ethical standards of conduct concerning activities that could allow covered individuals to improperly benefit financially from their public employment. This construction considers article XXIX as a whole and aligns with "the objective sought to be achieved and the mischief to be avoided by the amendment." Zaner, 917 P.2d at 283.

¶27     The Secretary argues that section 5 limits the IEC's jurisdiction to matters involving restrictions on conduct expressly articulated in article XXIX—i.e., the gift ban

15

and the lobbying restriction set forth in sections 3 and 4, respectively. The Secretary construes the phrase "any other standards of conduct and reporting requirements as provided by law" in section 5 to mean that issues arising under standards of conduct and reporting requirements outside of article XXIX fall within the IEC's jurisdiction only if such provisions expressly delegate enforcement to the IEC. Thus, the Secretary argues, only issues arising under sections 3 and 4 of article XXIX are currently within the commission's purview because the General Assembly has yet to expressly expand the IEC's jurisdiction beyond provisions contained in article XXIX. The Secretary concludes that the IEC lacked jurisdiction over this case because the allegations against him did not implicate the gift ban or the lobbying restriction under sections 3 and 4.

¶28    We are unpersuaded by the Secretary's narrow construction of section 5. First, we disagree with the Secretary's interpretation of the phrase "as provided by law." Nothing in article XXIX expressly requires the referenced "standards of conduct" or "reporting requirements" to delegate enforcement to the IEC. The Secretary cites no authority for his interpretation of the phrase "as provided by law." Instead, we conclude that the phrase "as provided by law" refers to laws already in existence. See Provided by Law, Black's Law Dictionary (6th ed. 1990) (defining "provided by law" to mean "prescribed or provided by some statute"). The Secretary's interpretation of the IEC's jurisdiction creates potential conflicts between section 5 and other provisions within article XXIX, which do not limit improper conduct to the activities described in sections 3 and 4. For instance, section 1 provides that "[a]ny effort" by covered

16

individuals to improperly realize personal financial gain through public office violates the public trust. Colo. Const. art. XXIX, § 1(1)(d). Similarly, section 6 imposes liability on covered individuals for "breaches [of] the public trust for private gain," without limiting such breaches to conduct prohibited under sections 3 and 4. Id. at § 6. In construing constitutional amendments, we avoid interpretations that would lead to such potential conflicts. See Zaner, 917 P.2d at 283.

¶29 Having concluded that "other standards of conduct . . . as provided by law" in article XXIX, section 5 means ethical standards of conduct concerning activities that could allow covered individuals to improperly benefit financially from their public employment, we next consider whether the allegations against the Secretary implicated any such ethical standards of conduct.

## C. Section 24-18-103

¶30 Decades before voters approved Amendment 41, the General Assembly added article 18 to title 24 of the Revised Statutes. See Ch. 169, sec. 1, 1988 Colo. Sess. Laws 899, 899–907.[6] Notably, article 18 is titled "Standards of Conduct." According to its legislative declaration, the article seeks to prescribe "standards of conduct common to those citizens involved with government." § 24-18-101, C.R.S. (2017). Part 1 of the article, spanning sections 101 through 113, is titled "Code of Ethics." The provisions in part 1 focus on improper financial benefit.

---

[6] Article 18 of title 24 was initially codified as article 17 of that title; it was later moved to its current location.

¶31 Section 24-18-103, titled "Public trust—breach of fiduciary duty," establishes a broad duty owed by all public officers, General Assembly members, local government officials, and government employees to the people of the state.[7] It provides that "[t]he holding of public office or employment is a public trust" and that a covered individual "shall carry out his [or her] duties for the benefit of the people of the state." § 24-18-103(1). Section 103 also establishes that a breach of the public trust constitutes a breach of fiduciary duty, stating that

> [a] public officer, member of the general assembly, local government official, or employee whose conduct departs from his [or her] fiduciary duty is liable to the people of the state as a trustee of property and shall suffer such other liabilities as a private fiduciary would suffer for abuse of his [or her] trust.

§ 24-18-103(2).

¶32 Section 24-18-104 provides that proof of the commission of any act expressly listed therein by a covered individual "is proof that the actor has breached his [or her] fiduciary duty and the public trust." § 24-18-104(1), C.R.S. (2017). In other words, the commission of an act identified in section 104 is a per se breach of an actor's section 103 duty. Such acts include, with limited exceptions, the use of confidential information

---

[7] For purposes of article 18, a "public officer" means "any elected officer, the head of a principal department of the executive branch, and any other state officer," but "does not include a member of the general assembly, a member of the judiciary, any local government official, or any member of a board, commission, council, or committee who receives no compensation other than a per diem allowance or necessary and reasonable expenses." § 24-18-102(8), C.R.S. (2017). The Secretary of State is therefore a public officer for purposes of article 18.

acquired in the course of official duties to substantially further one's personal financial interests; accepting a gift that would tend to improperly influence a reasonable person to depart from the faithful and impartial discharge of one's public duties; and accepting a gift that a reasonable person should know primarily constitutes a reward for taking a particular official action. Id.

¶33 We conclude that section 24-18-103, when read in conjunction with the rest of part 1 of article 18, establishes an ethical standard of conduct concerning activities that could allow covered individuals to improperly benefit financially from their public employment. Thus, allegations that a public official breached his or her fiduciary duty under section 103 by using public employment for improper personal financial gain fall within the ambit of the IEC's jurisdiction under article XXIX, section 5. The core duty in section 103 to act "for the benefit of the people of the state" encompasses an obligation to not use public employment for improper personal financial gain. This obligation is confirmed by section 104's description of specific conduct that would breach the section 103 duty, such as using confidential information for personal financial benefit or accepting a gift under improper circumstances. See § 24-18-104(1). Although section 104 identifies examples of activities that amount to a breach of the section 103 duty, section 24-18-101 makes clear that the Code of Ethics in part 1 of article 18 sets forth only "some standards of conduct" and does not purport to be an exhaustive list of prohibited activities. See § 24-18-101.

19

¶34    Given the allegations against the Secretary, we have no difficulty concluding that the IEC properly exercised jurisdiction over this case.  The claims here were predicated on allegations that the Secretary improperly used his discretionary funds for personal financial gain—specifically, that he used state funds for partisan purposes and that he accepted a reimbursement for personal purposes.  Such allegations clearly implicate the ethical standard of conduct set forth in section 24-18-103 and thus fall within the IEC's jurisdiction under article XXIX, section 5.  We therefore reject the Secretary's contention that the IEC lacked jurisdiction to hear this case.[8]

## D.  Vagueness

¶35    The Secretary also argues that if we decline to limit the IEC's jurisdiction to activities identified in sections 3 and 4 of article XXIX, then the IEC will be allowed to reach any law or rule in existence, rendering the phrase "other standards of conduct . . . as provided by law" in article XXIX, section 5 unconstitutionally vague.  We disagree.

¶36    As we have explained in recent cases, the vagueness doctrine is rooted in principles of procedural due process.  See Rocky Mountain Retail Mgmt., LLC v. City of

---

[8] We reject the Secretary's argument that the IEC lacked jurisdiction because the moneys in his discretionary fund under section 24-9-105 constituted "compensation."  First, the salaries of elected state officials are set forth in a different statutory provision, section 24-9-101, C.R.S. (2017).  Second, the Secretary's argument that the statute permits him to use the funds as he "sees fit," see § 24-9-105(1), suggests there are no restrictions on the expenditure of such funds.  This is not the case.  The discretionary fund statute expressly requires funds to be expended "in pursuance of official business."  Id.  Accordingly, statutorily-provided discretionary funds cannot be considered compensation akin to salary or wages.

Northglenn, 2017 CO 33, ¶ 20, 393 P.3d 533, 539; People v. Graves, 2016 CO 15, ¶ 17, 368 P.3d 317, 324. These principles require that laws give fair warning of prohibited conduct so that individuals may conform their actions accordingly. Rocky Mountain Retail Mgmt., ¶ 20, 393 P.3d at 539; Graves, ¶ 17, 368 P.3d at 324. However, a law is not unconstitutionally vague simply because it could have been drafted with greater precision. Rocky Mountain Retail Mgmt., ¶ 21, 393 P.3d at 539. Rather, a law is unconstitutionally vague only if it is vague "in the sense that no standard of conduct is specified at all." Id. (quoting Bd. of Educ. of Jefferson Cty. Sch. Dist. R-1 v. Wilder, 960 P.2d 695, 703 (Colo. 1998)).

¶37 Because vagueness challenges are predicated on a lack of notice, "such challenges cannot succeed in a case where reasonable persons would know that their conduct puts them at risk." Graves, ¶ 19, 368 P.3d at 325. When presented with a vagueness challenge, we first examine whether the challenged law put the challenger on reasonable notice of its application before analyzing other hypothetical applications of the law. See id. If the law clearly applies to the challenger, then his or her facial vagueness challenge necessarily fails. See Parker v. Levy, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); Graves, ¶ 19, 368 P.3d at 325 ("A litigant who engages in conduct that is clearly proscribed by a statute cannot complain of the vagueness of the law as applied to the conduct of others.").

21

¶38 Because the Secretary contends jurisdictional language in section 5 is impermissibly vague, the question here is not whether any relevant ethical statutes, such as section 24-18-103, clearly proscribe his conduct. Indeed, the IEC's determination that the Secretary's conduct violated these ethical statutes is not before this court.[9] Rather, the question is whether the Secretary had reasonable notice that the IEC had jurisdiction to investigate and adjudicate the allegations against him. If the Secretary had such reasonable notice, then he cannot complain of the vagueness of the IEC's jurisdiction as to himself or to others. See Parker, 417 U.S. at 756; Graves, ¶ 19, 368 P.3d at 325.

¶39 We conclude that the Secretary's vagueness challenge to section 5 necessarily fails because he had reasonable notice that the IEC had jurisdiction to investigate and adjudicate the allegations against him. As we concluded above, the phrase "other standards of conduct . . . as provided by law" refers to ethical standards of conduct concerning activities that could allow covered individuals to improperly benefit financially from their public employment. Section 24-18-103—which appears in a part titled "Code of Ethics" under an article titled "Standards of Conduct"—constitutes one

---

[9] Because the Secretary's petition for certiorari review did not challenge the IEC's factual findings or conclusions of law, including its determination that his conduct violated the discretionary fund statute and breached the public trust, we do not address these issues. See People v. Naranjo, 2017 CO 87, 401 P.3d 534, 538 n.2 (stating that this court "need not address issues not raised in the petition for certiorari review"); Berge v. Berge, 536 P.2d 1135, 1136 (Colo. 1975) (declining to consider issue not raised in petition for certiorari review).

such standard, and the allegations against the Secretary regarding his use of public funds for partisan and personal purposes clearly implicate this standard. Thus, the relevant constitutional and statutory provisions put the Secretary on reasonable notice of the IEC's jurisdiction over this case. Accordingly, the Secretary cannot complain that the jurisdictional language in section 5 is unconstitutionally vague, either as applied to him or to others.

## E. Procedural Due Process

¶40 Finally, we consider the Secretary's contention that the IEC provided insufficient notice of the claims against him, thereby violating his constitutional right to procedural due process. The Secretary contends that, while the IEC's prehearing notice listed statutory provisions and rules that he may have violated, the notice failed to sufficiently explain how or why his conduct violated these provisions or rules. He further contends that the IEC's prehearing notice unconstitutionally reserved the right to add legal claims against him. According to the Secretary, these notice defects limited his ability to craft his defense in this case.

¶41 The court of appeals evaluated the Secretary's procedural due process challenge under section 24-4-105(2), C.R.S. (2017), the statutory provision of Colorado's Administrative Procedure Act ("the APA") governing prehearing notice for adjudicatory proceedings conducted by administrative agencies. See Gessler, ¶¶ 52–54. Applying this standard, the court of appeals concluded that the Secretary received more than ample notice of the claims asserted against him, and the court therefore concluded

23

that the Secretary received constitutionally adequate notice.  Id. at ¶¶ 54–55.  In so ruling, the court of appeals assumed that the IEC is an administrative agency subject to the prehearing notice requirements contained in the APA.  See § 24-4-102(3), C.R.S. (2017) (defining "agency" as "any board, bureau, commission, department, institution, division, section, or officer of the state, except those in the legislative branch or judicial branch," with limited exceptions); § 24-4-105(2) (establishing prehearing notice requirements for "agency adjudicatory hearing[s]").

¶42     After the court of appeals issued its decision in this case, we decided Colorado Ethics Watch v. Indep. Ethics Comm'n, 2016 CO 21, ¶ 7, 369 P.3d 270, 272, in which we held that the General Assembly may not constitutionally enact legislation pertaining to the IEC's decisions not to enforce matters within its jurisdiction.  There, we observed that the IEC "is not an executive agency," but "is instead an independent, constitutionally created commission that is 'separate and distinct from both the executive and legislative branches.'"     Id. at ¶ 11, 369 P.3d at 272 (quoting Developmental Pathways, 178 P.3d at 532).  We further stated that "any authority that the General Assembly may exercise regarding [the] IEC's operations derives exclusively from Amendment 41 itself, not from standard principles of administrative agency law." Id.  Although we did not expressly hold in Colorado Ethics Watch that the APA has no bearing whatsoever on the IEC, our opinion in Developmental Pathways calls into question whether APA provisions apply to the IEC's adjudicatory proceedings.

24

¶43 However, we need not resolve that question here because we agree with the court of appeals' determination that, even if the notice here was insufficient, the Secretary has not shown how he was prejudiced. In both criminal and non-criminal contexts, we have long adhered to the principle that, in order to prevail on a procedural due process claim, a party must show that it has suffered prejudice as a result of the alleged violation. See e.g., People v. Rodriguez, 914 P.2d 230, 301 (Colo. 1996) (holding that "to obtain relief on a due process claim arising from an incomplete record, a [criminal] defendant must always demonstrate specific prejudice resulting from the state of that record"); Ward v. Indus. Comm'n, 699 P.2d 960, 969 (Colo. 1985) (holding that unemployment benefits claimant's due process rights were not violated "because the record discloses that he was not prejudiced by the notice or lack of bill of particulars to which he objects"); Ricci v. Davis, 627 P.2d 1111, 1122 (Colo. 1981) ("It is axiomatic that a party's due process rights are not infringed unless he has been prejudiced by the administrative procedures to which he objects."). We see no reason to depart from this well-established principle in this case.

¶44 Here, the record is insufficient to support the Secretary's claim that he suffered prejudice as the result of the allegedly deficient prehearing notice issued by the IEC. Crucially, the Secretary of State identifies no examples of facts, provisions, or rules that were raised at or after the hearing for which the Secretary did not have the opportunity to prepare a defense. Contrary to the Secretary's assertions, the record indicates that he was aware of why his conduct allegedly constituted an ethical violation—i.e., that he

25

improperly used his discretionary fund for personal financial gain. The record demonstrates that he mounted a vigorous defense to this theory at the hearing: through counsel, the Secretary examined witnesses, introduced documentary evidence, and presented argument regarding why he believed he "legally, ethically, and appropriately utilized" the discretionary funds at issue in this case. Moreover, nothing in the record indicates that the IEC actually considered any additional standards of conduct or reporting requirements not listed in the prehearing order. Under these circumstances, we conclude that the Secretary has failed to establish that he suffered any prejudice from the allegedly deficient notice. Therefore, we conclude that his procedural due process rights were not violated.

## III. Conclusion

¶45     We hold that the reference in article XXIX, section 5 to the IEC's authority to hear complaints under "any other standards of conduct . . . as provided by law" means ethical standards of conduct relating to activities that could allow covered individuals to improperly benefit financially from their public employment. We hold that the IEC properly exercised its jurisdiction in this case because the relevant language in article XXIX, section 5 authorizes it to hear allegations implicating the ethical standard of conduct set forth in section 24-18-103, which requires public officials to carry out their duties "for the benefit of the people of the state," and here, a public official was alleged to have misused discretionary funds for personal gain. Because we conclude that the IEC's jurisdiction in this case was proper and that the allegations against the Secretary

26

clearly fell within the scope of the IEC's jurisdiction, we reject the Secretary's jurisdictional and vagueness challenges. Finally, we reject the Secretary's procedural due process claim because he failed to demonstrate that he suffered any prejudice from the allegedly deficient notice. Accordingly, we affirm the judgment of the court of appeals.

**JUSTICE GABRIEL** does not participate.