25CA1249 Kauffman v Oil and Gas 06-04-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1249
City and County of Denver District Court No. 23CV30680
Honorable Ian J. Kellogg, Judge

---

K.P. Kauffman Company, Inc.,

Plaintiff-Appellant,

v.

Oil and Gas Conservation Commission of the State of Colorado n/k/a Colorado Energy and Carbon Management Commission,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Fox and Dunn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

---

Davis Graham & Stubbs LLP, John R. Jacus, R. Kirk Mueller, Aditi Kulkarni-Knight, Denver, Colorado, for Plaintiff-Appellant

Philip J. Weiser, Attorney General, Kyle W. Davenport, Senior Assistant Attorney General, Caitlin M. Stafford, Senior Assistant Attorney General, Denver, Colorado, for Defendant-Appellee

¶ 1    Defendant, the Energy and Carbon Management Commission (ECMC),[1] a part of the Colorado Department of Natural Resources, issued an order (1) terminating a "Compliance Plan Agreement" with plaintiff, oil and gas operator K.P. Kauffman Company, Inc. (Kauffman), that had been incorporated into a previous ECMC order; (2) assessing an administrative penalty of $1,935,030 against Kauffman for numerous violations of ECMC's rules enforcing the Energy and Carbon Management Act (the Act), sections 34-60-101 to -144, C.R.S. 2025;[2] and (3) suspending all of Kauffman's certificates of clearance to transport and sell product.[3]  Kauffman sought judicial review of the ECMC's order in the district court under section 24-4-106, C.R.S. 2025, of the State Administrative Procedure Act (APA); sections 13-51-101 to -115, C.R.S. 2025, the

---

[1] In 2023, the General Assembly renamed the Oil and Gas Conservation Commission the Energy and Carbon Management Commission.  Ch. 235, sec. 1, § 34-60-104.3, 2023 Colo. Sess. Laws 1231.

[2] The Act was previously known as the Oil and Gas Conservation Act.  The General Assembly renamed the Act in 2025.  Ch. 257, sec. 2, § 34-60-101, 2025 Colo. Sess. Laws 1290.

[3] A certificate of clearance "constitutes authorization to the Pipeline or other transporter to transport the authorized Fluid from the Well named" in the certificate.  Dep't of Nat. Res. Rule 219.a, 2 Code Colo. Regs. 404-1.

Uniform Declaratory Judgments Law; and C.R.C.P. 57, which concerns the court's power to issue declaratory relief. The court entered orders granting the ECMC's motion for partial summary judgment and affirming the ECMC's order. Kauffman now appeals the district court's judgment. We affirm.

## I. Regulatory Framework

¶ 2 The Act "established the [ECMC] to provide for the responsible development of the state's oil and gas resources." *Chase v. Colo. Oil & Gas Conservation Comm'n*, 2012 COA 94, ¶ 25; *see* § 34-60-102(1), C.R.S. 2025. The ECMC has the authority to "[r]egulate the development and production of the natural resources of oil and gas in the state of Colorado in a manner that protects public health, safety, and welfare, including protection of the environment and wildlife resources." § 34-60-102(1)(a)(I).

¶ 3 The ECMC comprises a commission and staff. The commission enforces provisions of the Act, makes rules to enforce the Act, and "do[es] whatever may reasonably be necessary to carry out the provisions of the [A]ct." *Voss v. Lundvall Bros., Inc.*, 830 P.2d 1061, 1065 (Colo. 1992) (citing § 34-60-105(1), C.R.S. 1984). The staff carries out the ECMC's day-to-day operations and alerts

2

the commission to any alleged violations. *See* § 34-60-104.5(2)(d)(I), C.R.S. 2025.

¶ 4    Any operator that violates the Act or the ECMC's rules may be subject to monetary penalties. § 34-60-121(1)(a), C.R.S. 2025. The commission may impose a penalty on an operator through an order finding violation (OFV) after an adjudicatory hearing or through an administrative order by consent (AOC). § 34-60-121(1)(b). Penalties are calculated based on the "severity of the potential consequences of a violation of a specific rule combined with an assessment of the degree of actual or threatened adverse impacts to public health, safety, welfare, the environment, and wildlife resources." Dep't of Nat. Res. Rule 525.c, 2 Code Colo. Regs. 404-1.

¶ 5    In addition to monetary penalties, the commission may order an operator to take corrective actions and may include a plan or schedule for completion of those actions in its final administrative order. *See* § 34-60-121(1)(c)(I)(C); *see also* Dep't of Nat. Res. Rule 523.f, 2 Code Colo. Regs. 404-1. The commission may also impose penalties, such as prohibiting the issuance of new permits, suspending certificates of clearance, and suspending the operator's license to conduct oil and gas operations, if it finds that the

operator committed a pattern of violations. § 34-60-121(7)(a)(II), (b). The commission defines a pattern of violations as "a history of violations of the Act, Commission Rules, orders, and/or permits that demonstrates an operator's disregard for those legal requirements." Colo. Oil & Gas Conservation Comm'n, *Statement of Basis, Specific Statutory Authority, and Purpose: New Rules and Amendments to Current Rules of the Colorado Oil and Gas Conservation Commission, 2 CCR 404-1* (Jan. 5, 2015), https://perma.cc/FNF4-NLE9.

¶ 6 If staff believes that an operator has violated an ECMC rule, staff may issue a notice of alleged violation (NAV). Dep't of Nat. Res. Rule 523.c, 2 Code Colo. Regs. 404-1. If staff also alleges that the operator has engaged in a pattern of violations, the commission must hold an OFV hearing before it may impose penalties. *Id.* at Rule 523.d.(2). At an OFV hearing, staff and the operator may present witnesses and evidence before a hearing officer. *Id.* at Rule 510; *see id.* at Rule 521. The commission then issues a written order with its decision and, if applicable, a penalty assessment. *Id.* at Rule 521. Once the commission's order is finalized, the operator can seek judicial review. *Id.*

## II. Factual Background

¶ 7     From October 2019 to January 2021, staff issued eight NAVs to Kauffman for various violations, including failing to report spills, maintain equipment properly, and prevent soil and water contamination.  The commission set a hearing to consider all eight NAVs.

¶ 8     Following the hearing, the commission concluded that Kauffman had committed twenty-two violations across seven of its drilling locations.  The commission also heard arguments about whether Kauffman had committed a pattern of violations and concluded that it had.  The commission assessed a monetary penalty of $2,014,530.  Kauffman told the commission that it was unable to pay a monetary penalty greater than $795,000 without going bankrupt.

¶ 9     After the hearing, the commission directed staff and Kauffman to create a plan intended to bring Kauffman into compliance with the Act for the commission's consideration.  The commission authorized the commission's chair to oversee the plan's creation.  Staff and Kauffman met and came up with a "Compliance Plan Agreement" (CPA).

¶ 10    The CPA discussed Kauffman's violations, as well as its claimed inability to pay a fine greater than $795,000.  It said that the commission would suspend part of the monetary penalty if Kauffman complied with the CPA's corrective actions.  Section IV of the CPA set out the corrective actions, including requirements and deadlines for remediation plans; creation of a "Global Remediation Implementation Plan"; and submission of a "Flowline System Integration Plan," a "Comprehensive Waste Management Plan," and a "Spill/Release Reporting and Training Plan."  Each remediation plan had an attached penalty that the commission would impose should Kauffman fail to complete the respective corrective actions.

¶ 11    The CPA also contained a terms and conditions section.  As now relevant, the terms and conditions said that, should Kauffman fail to substantially comply with Section IV's requirements as a whole, the commission retained the right to terminate the CPA and reinstate the suspended penalties.

¶ 12    Staff and Kauffman presented the CPA to the commission for its consideration.  The commission approved the CPA and simultaneously directed that it be incorporated into its final order

— Order 1V-772 (Order 772). Order 772 was finalized on November 23, 2021.

¶ 13 Soon after the commission issued Order 772, staff reported that Kauffman was failing to meet Order 772's requirements. The commission held a hearing in June 2022 to determine whether Kauffman was substantially complying with the order. The commission found that Kauffman hadn't substantially complied with the order's requirements. But instead of requiring immediate payment of the penalties, the commission required Kauffman to provide two quarterly updates, one in October 2022 and one in January 2023, to demonstrate its compliance.

¶ 14 At the October 2022 hearing, both Kauffman and staff presented information about Kauffman's progress. At the end of the hearing, the commission "reiterated its intent to convene a hearing" in January 2023 to determine Kauffman's compliance.

¶ 15 At the January 2023 hearing, staff and Kauffman presented their positions on Kauffman's progress. Following that hearing, the commission issued Order 1V-863 (Order 863). Order 863 states that "the evidence at [the] hearing demonstrated [Kauffman] did not make progress toward remediation at most CPA Sites, which is

inexcusable," and "[t]his matter presents a rare case of an operator with wide-spread, systemic, repeated violations of [ECMC] Rules, that the same operator refuses to correct in a timely or successful manner." The order terminated the CPA, reinstated the suspended penalties, suspended Kauffman's certificates of clearance, and required Kauffman to bring all of its facilities into compliance with the Act.

¶ 16    Kauffman sought judicial review of Order 863 in the district court. Kauffman's complaint asserted that the CPA constitutes an enforceable contract, that the commission had breached that contract, and that the commission had breached the contract's covenant of good faith and fair dealing. Kauffman also asserted that Order 863 violates its rights under the APA and violates its Eighth Amendments rights.

¶ 17    The ECMC filed a motion for partial summary judgment regarding Kauffman's contract claims. After argument on the motion, the court granted the ECMC's motion for partial summary judgment. The court found that the CPA isn't a contract, but instead "the CPA is an agency action memorialized in Order 772." Thus, Kauffman could only seek relief from the CPA under the APA.

And because the CPA isn't a contract, Kauffman's other contract claims failed.

¶ 18    In a separate order, the court affirmed Order 863. It found that Order 863 isn't arbitrary and capricious and thus doesn't violate the APA. It also found that Order 863 doesn't violate Kauffman's Eighth Amendment rights.

## III.    Discussion

¶ 19    With respect to the ECMC's motion for partial summary judgment, Kauffman contends that the district court erred because the CPA is an enforceable contract apart from Order 772. With respect to the court's order affirming Order 863, Kauffman contends that the court erred because the penalties imposed by the ECMC are arbitrary and capricious and violate the Eighth Amendment. We address and reject each of these contentions in turn.

### A.    The CPA Isn't a Contract

¶ 20    Kauffman contends that the district court erred by granting partial summary judgment in the ECMC's favor because the CPA is an enforceable contract and the commission breached that contract. We conclude that the CPA isn't an enforceable contract

9

independent of Order 772, and therefore we don't need to address Kauffman's other contract-based contentions.

### 1. Standard of Review

¶ 21 We review a district court's summary judgment order de novo. *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 657 (Colo. 2011). "Summary judgment is only proper where there is no genuine issue of material fact in dispute, entitling the moving party to summary judgment as a matter of law." *Id.* The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Univ. of Denv. v. Doe*, 2024 CO 27, ¶ 8. The court must draw all reasonable inferences from the facts in the nonmoving party's favor. *Id.*

### 2. Applicable Law

¶ 22 To prove a breach of contract, a party must first prove the existence of a contract. *Tuscany Custom Homes, LLC v. Westover*, 2020 COA 178, ¶ 52. "An enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997) (citing *Denv. Truck Exch. v. Perryman*, 307 P.2d 805 (Colo. 1957)). "An

10

offer is a manifestation by one party of a willingness to enter into a bargain." *Id.* (citing Restatement (Second) of Contracts 24 (A.L.I. 1979)).

### 3.    Analysis

¶ 23    As noted above, the commission has the authority to order an operator to take corrective actions. We agree with the district court that the CPA, as incorporated into Order 772, was intended only as "a form of agency action" to direct Kauffman's compliance with its legal obligations — that is, to take corrective actions. The relevant undisputed facts show that it wasn't intended — at least by the commission — to be an independently enforceable contract.

¶ 24    The commission authorized its chair to oversee the creation of a compliance plan — one that the commission would consider and, if approved subject to the commission's revisions, would be incorporated into an agency order. But the commission retained the sole authority to determine the terms of the plan and expressly contemplated incorporating the plan into an agency order. During a hearing regarding Kauffman's violations before Order 772, one commissioner said, "[W]e're providing a compliance plan and there should be some opportunity for input . . . from other parties. But

11

ultimately, it is this Commission that is determining that compliance plan." Other commissioners expressed a similar intent.

¶ 25 The commission also had the ultimate authority to accept, reject, or change the CPA, without any input from Kauffman. The CPA reflected this authority, stating that "[t]he Commission considered whether any additional terms and conditions are necessary to attain compliance with the violations cited in the [Kauffman NAVs] or with the finding of a pattern of violations." Ultimately, the commission simultaneously approved the CPA and ordered it incorporated into its final agency order — Order 772. Kauffman doesn't point to anything in the record indicating that anyone contemplated that the CPA would thereafter retain any force independent of Order 772.

¶ 26 We also observe that the ECMC's statutory and regulatory framework doesn't provide for any process pursuant to which the commission may contract with the operator separately with respect to the operator's obligation to comply with the law. *See* Dep't of

Nat. Res. Rules, 2 Code Colo. Regs. 404-1.[4]  But the framework

does allow the commission to include corrective actions in its final

orders, as it did in this case.  *See* § 34-60-121(6) (the ECMC has the

authority to take necessary action to bring the operator into

compliance; the operator must "bring the affected operations into

compliance under the supervision of the commission").

¶ 27     We therefore conclude that the undisputed facts establish as a

matter of law that the CPA, though superficially bearing some of the

formal indicia of a contract, isn't an independently enforceable

contract because there was no mutual assent to a bargained-for

exchange — no offer or acceptance.  *See Indus. Prods. Int'l*, 962

P.2d at 988.  It follows that the district court didn't err by granting

the ECMC's motion for partial summary judgment.[5]

---

[4] Kauffman argues that the "ECMC and other governmental agencies are authorized to enter into private party contracts for various purposes including . . . to resolve litigation and other disputes."  But even if the ECMC has such authority, it wasn't used in this case.

[5] Kauffman also argues that the CPA retained its contractual status when it became part of Order 772.  But because we have concluded that the CPA wasn't a contract in the first instance, this argument necessarily fails.

B.    Order 863's Penalties Aren't Arbitrary and Capricious

¶ 28    Next, Kauffman contends that the penalties imposed by Order 863 are arbitrary and capricious in violation of the APA because the commission continually shifted the meaning of "substantial compliance," didn't give Kauffman sufficient time to comply, and imposed the most severe sanctions available.  We disagree.

1.    Standard of Review and Applicable Law

¶ 29    "Our review of a district court's decision in a proceeding under the [APA] is de novo.  We sit in the same position as the district court and review the agency's decision for [an] abuse of discretion." *Farmer v. Colo. Parks & Wildlife Comm'n*, 2016 COA 120, ¶ 12; *accord Weld Air & Water v. Colo. Oil & Gas Conservation Comm'n*, 2019 COA 86, ¶ 32.

¶ 30    "[The ECMC] rules, regulations, or final orders are subject to judicial review in accordance with the APA." *Chase*, ¶ 20 (citing § 34-60-111, C.R.S. 2025).  A "reviewing court may overturn an administrative agency's determination only if the court finds the agency acted in an arbitrary and capricious manner, made a determination that is unsupported by the record, erroneously interpreted the law, or exceeded its constitutional or statutory

14

authority." *Id.* (quoting *Sapp v. El Paso Cnty. Dep't of Hum. Servs.*, 181 P.3d 1179, 1182 (Colo. App. 2008)). An agency acted arbitrarily and capriciously if "no substantial evidence exists in the record to support the agency's decision." *Gessler v. Grossman*, 2015 COA 62, ¶ 39, *aff'd*, 2018 CO 48. "An agency decision is not arbitrary or capricious if it reflects a 'conscientious effort to reasonably apply legislative standards to particular administrative proceedings.'" *Id.* (quoting *Moya v. Colo. Ltd. Gaming Control Comm'n*, 870 P.2d 620, 624 (Colo. App. 1994)).

¶ 31 In determining whether the agency acted arbitrarily and capriciously, "[w]e examine the record in the light most favorable to the agency decision." *Chase*, ¶ 21 (quoting *Sapp*, 181 P.3d at 1182); *accord Weld Air & Water*, ¶ 33. And "we may not substitute our judgment for that of the agency." *Gessler*, ¶ 39.

2. The Meaning of "Substantially Comply"

¶ 32 Order 772 said that if Kauffman "fails to substantially comply with the requirements of Section IV of the Plan," the commission could "terminate the Plan, impose any remaining outstanding portions of the Penalty Amount, suspend any or all of [Kauffman's] Certificates of Clearance, or refuse to issue [Kauffman] new Oil and

15

Gas Development Plans." It also put the burden on Kauffman "of demonstrating compliance with this Plan." The term "substantially comply" isn't defined in Order 772 or the Act.

¶ 33    In its prehearing statement submitted in advance of the June 2022 hearing, Kauffman asserted that substantial compliance "does not require [Kauffman] to demonstrate exact compliance with Section IV requirements, but rather 'compliance with the essential requirements' of the agreement."

¶ 34    At the June 2022 hearing, the commission's chair said that substantial noncompliance meant "where there is a sort of total failure to comply . . . with the CPA," and it was "not intended to be . . . more of a sort of technical noncompliance . . . with the little things."

¶ 35    During the January 2023 hearing, Kauffman argued that the term "substantial compliance" was ambiguous. The commission indicated that "substantial compliance" meant "compliance with the essential requirements and purpose of Section IV. These essential requirements include not only Kauffman's timely submittal of the forms and plans required by Section IV, but also successful implementation of those forms and plans." As noted, at the end of

the hearing, the commission concluded that Kauffman hadn't substantially complied with Order 772.

¶ 36    In its appeal to the district court, Kauffman argued that the commission's interpretation of substantial compliance had continually shifted and that the commission had failed to properly notify it of the proper standard.  The court ruled that the commission didn't act arbitrarily or capriciously by terminating the CPA because its decision was supported by substantial evidence in the record.

¶ 37    Kauffman cites no authority, and we have found none, holding that minimal compliance, coupled with evidence of substantial noncompliance (discussed below), is sufficient to meet a "substantial compliance" requirement.  *See, e.g., Brighton Pharmacy, Inc. v. Colo. State Pharmacy Bd.*, 160 P.3d 412, 415 (Colo. App. 2007) ("Substantial compliance is more than minimal compliance, but less than strict or absolute compliance."); *see also Grp., Inc. v. Spanier*, 940 P.2d 1120, 1122 (Colo. App. 1997) ("Substantial compliance is less than absolute, but still requires a significant level of conformity.").  As for Kauffman's assertion that the commission treated substantial compliance as a moving target

17

by articulating that requirement in different ways, we aren't persuaded that the statements on which Kauffman relies either differed materially from each other or deviated from the generally accepted meaning of the term. And, in any event, as discussed below, Kauffman's conduct failed any reasonable articulation of the standard.

### 3. The Timing of Order 863

¶ 38 Kauffman also argues that the commission arbitrarily and capriciously terminated the CPA because it did so just fifteen months into the five-year compliance term. Kauffman argues that, though it didn't meet many of Order 772's requirements, it spent millions of dollars attempting to do so. But Order 772 didn't require that Kauffman spend a certain amount of money. Nor did Order 772 prohibit the commission from evaluating Kauffman's performance thereunder until the end of the five-year term. As well, the staff presented evidence, on which the commission relied, that Kauffman had failed to complete remediation projects that had been ongoing for years, that Kauffman was failing to meet various deadlines, and that Kauffman was inadequately protecting the public from its open excavations. From this evidence, the

commission could reasonably have concluded that Kauffman wasn't substantially complying with its obligations from the get-go.

¶ 39 Kauffman argues nevertheless that the record doesn't support a conclusion that it failed to substantially follow Order 772 because the commission emphasized minor deficiencies such as "inadequate fencing" and "significant weeds." But the commission also found major deficiencies, such as open excavations and failure to implement the Waste Management Plan.

### 4. Most Severe Penalties

¶ 40 Kauffman contends that the commission acted arbitrarily and capriciously by imposing the most severe sanctions available rather than pursuing other remedial options. But nothing in Order 772 required the commission to impose the lesser sanctions provided for in Section IV because those sanctions were intended to apply only if Kauffman failed to comply with specific subsections of Section IV. And Order 772 provided that, should Kauffman fail to comply with Section IV as a whole, the commission could terminate the CPA and impose the original sanctions.

### 5. The Commission Didn't Act Arbitrarily and Capriciously by Imposing the Penalties

¶ 41    The commission didn't act arbitrarily or capriciously by imposing the penalties because there is evidence in the record showing that Kauffman didn't substantially comply with Order 772's requirements.  For example, at the commission's October 2022 hearing, staff presented evidence that Kauffman continuously showed problems with properly reporting spills and meeting deadlines for satisfying CPA requirements.  Kauffman missed sixty-eight Global Remediation Implementation Plan project milestones, closed only two of fifty-eight remediation projects, and failed to adequately describe spill reports as required by ECMC Rule 912.b.(2).  *See* Dep't of Nat. Res. Rule 912.b.(2), 2 Code Colo. Regs. 404-1.

¶ 42    We therefore conclude that Kauffman failed to establish that the commission's decision to terminate the CPA and impose the sanctions permitted under Order 772 was arbitrary and capricious.

### C. The Penalties Don't Violate the Eighth Amendment

¶ 43    Lastly, Kauffman contends that penalties imposed by the commission under Order 863 — suspension of Kauffman's

certificates of clearance and a fine of almost $2 million — violate its rights under the Eighth Amendment because they are grossly disproportional to the violations and will cause Kauffman to file for bankruptcy. We conclude that the penalties don't violate the Eighth Amendment.

### 1. Applicable Law and Standard of Review

¶ 44 The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Excessive Fines Clause isn't limited in its application to natural persons. *Colo. Dep't of Lab. & Emp. v. Dami Hosp., LLC*, 2019 CO 47M, ¶ 23.[6]

¶ 45 To determine whether a fine is excessive, we examine whether the fine is "grossly disproportional to the gravity of the subject offense." *Id.* at ¶ 18 (citing *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). To determine proportionality, we consider the nature of the offense, whether the offense is related to other illegal activities, and the extent of the harm caused by the offense.

---

[6] The Eighth Amendment doesn't only apply to monetary fines. *See Austin v. United States*, 509 U.S. 602, 615, 622 (1993) (civil forfeiture punishments are subject to the Excessive Fines Clause).

*Bajakajian*, 524 U.S. at 337-39.  We may also consider a party's ability to pay the fine, though this isn't dispositive.  *Dami Hosp.*, ¶ 31.  A fine that bankrupts a party may be considered excessive, but it may also be proportional to the gravity of the party's offense. *See id.*

¶ 46    We review an excessive fine challenge de novo.  *See People v. Cardenas*, 262 P.3d 913, 914 (Colo. App. 2011).[7]

## 2.    Analysis

¶ 47    Kauffman argues that the penalties violate the Eighth Amendment because Order 863 suspends *all* of Kauffman's certificates of clearance and imposes a monetary penalty of company-wide consequence "based on issues arising at a limited number of sites."

¶ 48    But Order 863 is based on Kauffman's violations of several of the commission's regulations numerous times and the commission's finding of a pattern of company-wide violations.  The

---

[7] The ECMC argues that Kauffman is precluded from challenging the penalty amount on appeal because the deadline to challenge Order 772 has passed.  But Kauffman is challenging Order 863, which terminated the CPA and reinstated the commission's original penalties.

commission found that "[Kauffman's] current practices present threatened and actual adverse impacts to public health, safety, and welfare, the environment, and wildlife resources." And after Order 772, Kauffman continued to violate provisions of the Act regulations and ECMC rules. While specific violations may not have occurred at every Kauffman site, the gravity of the offenses, the continuing nature of the violations, and the pattern of company-wide violations support the commission's decision to impose the subject penalties.

¶ 49 Kauffman also argues that the monetary penalty is grossly disproportional because it may cause the company to file for bankruptcy and go out of business.

¶ 50 The fact that a company may go out of business doesn't alone render a penalty grossly disproportional. Rather, it is one factor to be considered. *Dami Hosp.*, ¶ 31 ("For some types of criminal or regulatory infractions, a penalty that would have that kind of grave consequence might be warranted . . . ."). The commission considered Kauffman's potential bankruptcy when it approved the CPA and incorporated it into Order 772, thereby suspending most of the monetary penalty. But when Kauffman failed to substantially comply with Order 772, the commission found it necessary to

impose its original penalties. On this record, we can't say that the commission's determination violates Kauffman's Eighth Amendment rights.

## IV.  Disposition

¶ 51    We affirm the judgment.

JUDGE FOX and JUDGE DUNN concur.